**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Francis Floyd ANT,
Defendant–Appellant.**

No. 88–3035.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 5, 1988.

Filed July 27, 1989.

As Amended Aug. 9, 1989.

---

Vernon E. Woodward, Billings, Mont., for defendant-appellant.

Bryon H. Dunbar, U.S. Atty., and Robert L. Zimmerman, Asst. U.S. Atty., Billings, Mont., for U.S.

Before TANG, THOMPSON and O'SCANNLAIN, Circuit Judges.

TANG, Circuit Judge:

In his federal manslaughter prosecution, Francis Floyd Ant appeals the district court's refusal to suppress a guilty plea made earlier in tribal court. Both the tribal and federal cases arise out of the same alleged incident. Ant claims that the plea should be suppressed because he did not have an attorney in tribal court and because the plea was not voluntary. In denying Ant's suppression motion, the district court found that the plea was made in concordance both with tribal law and the Indian Civil Rights Act (ICRA), 25 U.S.C. § 1302, and ruled that suppressing the plea would violate principles of comity and disparage the tribal proceedings. On review, we hold that because the tribal court guilty plea was made under circumstances which would have violated the United States Constitution were it applicable to tribal proceedings, and because suppression of the plea would not violate principles of comity, would not be disparaging to the tribal court proceedings, and would not unduly prejudice the government, the judgment of the district court is reversed.

## I. FACTUAL BACKGROUND

Except for the facts surrounding the acceptance of Ant's guilty plea in tribal court, the Government stipulated to the facts as presented by Ant.

On October 27, 1986, the body of an Indian woman was found on the Northern Cheyenne Indian Reservation. The victim was later identified as Keri Lynn Birdhat, a niece of Mr. Ant. On December 17, 1986, Bureau of Indian Affairs and tribal police went to Ant's residence and obtained a confession, even though Ant had not been advised of his rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). After the confession, Ant was placed under arrest on tribal charges of assault and battery, and the tribal police chief read Ant his *Miranda* rights. Ant was then taken to tribal court for arraignment before Judge Spang where Ant entered a plea of guilty.

It is Judge Spang's normal practice at arraignment to advise defendants of their

right to counsel, including the right to have counsel appointed, but not to ask defendants if they want or can afford an attorney. Ant claims that Judge Spang went immediately from reciting his rights to asking him if he were guilty or not guilty. Ant replied "guilty" and was sentenced to six months in jail, a sentence which he served. The Government contends that Judge Spang explained the meaning of a guilty plea ("that means you admit to the charge"), a contention that Ant does not refute. The Government also contends that Ant said that he understood his rights prior to pleading guilty.

On January 7, 1987, a federal indictment was filed charging Ant with voluntary manslaughter, under 18 U.S.C. §§ 1112 and 1153, for "unlawfully and willfully" killing Birdhat.[1] Ant made his initial appearance in federal court on January 16, 1987 and was furnished appointed counsel.

On February 24, 1997, Ant moved to suppress his confession and his tribal court guilty plea on the grounds that this evidence was obtained in violation of *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). On March 27, 1987, the district court granted the motion to suppress the confession based on a violation of *Miranda* but denied the motion to suppress the tribal court guilty plea. Ant renewed the motion to suppress his tribal court guilty plea on November 13, 1987, this time on Sixth Amendment grounds. The district court denied this motion to suppress on December 30, 1987. In this ruling, the district court noted that the proceedings during the tribal court arraignment were consistent both with tribal law and the ICRA and concluded that:

[c]omity and respect for legitimate tribal proceedings requires that this Court not

disparage those proceedings by suppressing them from evidence in this case.

On January 4, 1988, Ant filed a reservation of rights upon entry of a conditional guilty plea, pursuant to Fed.R.Crim.P. 11(a)(2).[2] After a sentencing hearing, the district court sentenced Ant to three years in prison and fined him $50. Ant was released on his own recognizance and the execution of his sentence was deferred pending this appeal. Ant filed his Notice of Appeal on February 4, 1988.

## II.  ISSUES

The ultimate legal issue presented by this appeal is whether an uncounseled guilty plea, made in tribal court in accordance both with tribal law and the ICRA, but which would have been unconstitutional if made in a federal court, can be admitted as evidence of guilt in a subsequent federal prosecution involving the same criminal acts. Before reaching this issue, three preliminary questions need to be addressed:

(a) whether the procedures surrounding Ant's guilty plea in tribal court did comply with tribal law and with the ICRA;

(b) whether a prior guilty plea can generally be used as evidence in a subsequent prosecution; and

(c) whether Ant's plea would have been constitutionally permissible had it been made in federal court.

## III.  VALIDITY OF THE GUILTY PLEA UNDER TRIBAL LAW AND THE ICRA

■ According to Northern Cheyenne tribal law, Revised Law and Order Ordinances of the Northern Cheyenne Tribe of

---

**1.** On April 8, 1987, the Government moved to dismiss the indictment on the basis that new evidence was found that may support an indictment for second degree murder. This motion was granted the next day. On September 10, 1987, Ant was reindicted, not on second degree murder, but on the identical voluntary manslaughter charges as in the first indictment.

**2.** On January 25, 1988, Ant moved to withdraw his conditional guilty plea on the grounds that the second indictment erroneously included an

element of "willfully" to the manslaughter charge. On February 12, 1988, Ant filed a waiver of indictment and consented to be charged with an information, and on that same day, an information was filed charging Ant with "unlawfully" killing Birdhat. On February 16, 1988, Ant's conditional guilty plea to the correct charge, as stated in the information, was entered and the district court filed a Judgment and Commitment Order.

the Northern Cheyenne Reservation of Montana, Ch. 1, § 9, the applicable law of the court in which Ant pleaded guilty, "[a]ny Indian charged with an offense, *at his option and expense,* may be represented in tribal court by professional legal counsel, or, by a member of the Tribe" (emphasis added). Also, according to the ICRA, "[n]o Indian tribe ... shall deny to any person in a criminal proceeding the right ... *at his own expense* to have assistance of counsel." 25 U.S.C. § 1302(6). The Ninth Circuit has held that, the due process clause of the ICRA notwithstanding, 25 U.S.C. § 1302(8), there is no federal right to appointed counsel in tribal criminal proceedings. *Tom v. Sutton,* 533 F.2d 1101 (9th Cir.1976). It is clear that in tribal court, Ant was entitled to have an attorney at his own expense, but that he was not entitled to have a court-appointed attorney.[3]

▮ The parties differ in their interpretation of the facts surrounding Ant's plea of guilty in tribal court. Ant admits that Tribal Judge Spang told him that he had a right to a court-appointed attorney, a privilege that exceeds the requirements of tribal law and the ICRA, but claims that she did not ask him if he had an attorney, if he wished an attorney, or if he could afford an attorney. The excerpted colloquy in the Government's brief shows that Ant indicated that he understood his rights, but it is not clear whether a knowing and intelligent waiver of the right to counsel was accomplished.

The district court made a factual determination that the plea was made in accordance with both tribal law and the ICRA, despite Ant's lack of representation by counsel. Certainly, it would be a much easier question on appeal if it were determined that Ant's guilty plea was *not* made in accordance with tribal law or the ICRA; this in itself might be a reason to suppress the plea. But because the district court's determination that Ant's guilty plea is valid under tribal law cannot be said to be clearly erroneous, *see Chua Han Mow v. United States,* 730 F.2d 1308 (9th Cir.1984), *cert. denied,* 470 U.S. 1031, 105 S.Ct. 1403, 84 L.Ed.2d 790 (1985), and because "[f]ederal courts must avoid undue or intrusive interference in reviewing Tribal Court procedures," *Smith v. Confederated Tribes of the Warm Springs Reservation of Oregon,* 783 F.2d 1409 (9th Cir.), *cert. denied,* 479 U.S. 964, 107 S.Ct. 465, 93 L.Ed.2d 410 (1986), we accept the district court's finding as to the validity of the guilty plea under tribal law and the ICRA.[4]

## IV. ADMISSIBILITY OF AN EARLIER GUILTY PLEA IN A SUBSEQUENT FEDERAL PROSECUTION

### A. *When Earlier Guilty Plea Has No Constitutional Infirmities*

An earlier guilty plea has been held to be admissible in a subsequent federal prosecution, even if the proceedings are in different jurisdictions, if the earlier guilty plea was made under conditions consistent with the United States Constitution. In *United States v. Riley,* 684 F.2d 542 (8th Cir.1982), *cert. denied,* 459 U.S. 1111, 103 S.Ct. 742, 74 L.Ed.2d 962 (1983), for example, a defendant's guilty plea to a state misdemeanor pimping charge was ruled admissible in a subsequent federal prostitution prosecution under the Mann Act.

---

3. The assertions of the dissent notwithstanding, we are not at all "troubled" by the fact that the Sixth Amendment is not binding upon tribal courts. [*See Dissent* at 1398.] Furthermore, we disagree that our holding "will have far-reaching consequences since virtually all tribal court guilty pleas will be inadmissible in federal court, given the less stringent requirements of the ICRA." [*Dissent,* at 1398 n. 2.] Although this precise issue is not currently before us, we presume that a properly counseled and voluntary guilty plea in tribal court would be admissible in a federal court.

4. It should be noted at the onset that "when an Indian tribe criminally punishes a tribe member for violating tribal law, the tribe acts as an independent sovereign, and not as an arm of the Federal Government." *United States v. Wheeler,* 435 U.S. 313, 329, 98 S.Ct. 1079, 1089, 55 L.Ed.2d 303 (1978) (footnote omitted). Thus "[s]ince tribal and federal prosecutions are brought by separate sovereigns, they are not 'for the same offence,' and the Double Jeopardy clause thus does not bar one when the other has occurred." *Id.* at 329–30, 98 S.Ct. at 1089.

The defendant Riley argued that the admission of the state guilty plea "was tantamount to directing a verdict against him on the Mann Act charges." 684 F.2d at 544. Similarly, in the instant case, because the tribal federal charges arose out of the exact same incident,[5] the admission of Ant's tribal court guilty plea in federal court could also be seen as tantamount to a directed verdict against him, particularly as evidenced by his conditional guilty plea. Nevertheless, in *Riley*, the earlier state guilty plea was held to be admissible in the subsequent federal prosecution as an "admission" under Fed.R.Evid. 801(d)(2), although unlike the instant case, there were no claims that the earlier guilty plea was in any way invalid. *See also United States v. Holmes*, 794 F.2d 345, 349 (8th Cir.1986).

### B. When Earlier Guilty Plea Has Constitutional Infirmities

On the other hand, there is direct authority supporting the proposition that evidence from a prior proceeding obtained in violation of the United States Constitution cannot be used in a subsequent federal prosecution. Indeed, in *Elkins v. United States*, 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960), the Supreme Court rejected the "silver platter" doctrine, ruling that evidence obtained by state officials in violation of the Fourth Amendment is inadmissible in a subsequent federal prosecution.[6] In a case closer on point to the instant situation, a court suppressed the defendant's prior state court guilty plea in the subsequent federal prosecution where "he was never

advised by anyone that his plea and statements or admissions in State Court would or could be used against him." *United States v. Edwards*, 669 F.Supp. 168, 171 (S.D. Ohio 1987). Similarly, Ant was not advised that the tribal court proceedings could be used against him in a subsequent felony prosecution in federal district court.[7]

### V. VALIDITY OF ANT'S TRIBAL COURT GUILTY PLEA HAD IT BEEN MADE IN FEDERAL COURT

Because, as discussed above, it is inherently prejudicial to admit a constitutionally infirm plea against a defendant at a subsequent trial on a new offense, *see Burgett v. Texas*, 389 U.S. 109, 115, 88 S.Ct. 258, 262, 19 L.Ed.2d 319 (1967), it is thus necessary to examine the constitutional validity of Ant's earlier tribal court guilty plea, independent of issues involving tribal law or the ICRA, as if the plea had been made in federal court. Our conclusion is that if Ant's tribal court guilty plea had been made in a federal court, not only would it be constitutionally infirm, but it would also be inadmissible in a subsequent federal prosecution.

### A. Sixth Amendment Right to Counsel At Time of Pleading Guilty

The Sixth Amendment right to counsel attaches at "critical" stages in a criminal prosecution where "substantial rights of a criminal accused may be affected." *Mempa v. Rhay*, 389 U.S. 128, 134, 88 S.Ct. 254, 256, 19 L.Ed.2d 336 (1967). Particularly since Ant was sentenced to tribal jail imme-

---

5. According to the ICRA, a tribal court may not impose a sentence of more than one year. 25 U.S.C. § 1302(7). This was increased from six months on October 27, 1986. Pub.L. 99–570 § 4217. The question is unresolved as to whether a tribe has concurrent jurisdiction with the federal courts to prosecute a member for one of the crimes enumerated in the Major Crimes Act, 18 U.S.C. § 1153, such as manslaughter or murder. D. Getches & C. Wilkinson, *Federal Indian Law* 401 (2d ed. 1986).

6. Also, in *United States v. Manuel*, 706 F.2d 908, 911 n. 3 (9th Cir.1983), we concluded in dicta that fruits of a constitutionally infirm arrest by tribal police are inadmissible in a federal prosecution.

7. Regarding a related issue, in *United States v. Tucker*, 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972), the Supreme Court disapproved a sentence which had been enhanced by uncounseled prior convictions. *But see United States v. Fleishman*, 684 F.2d 1329, 1346 (9th Cir.) (in a drug case, sentencing judge's consideration of prior uncounseled Mexican convictions on drug charges was not error when judge was aware of the constitutional infirmities of the prior convictions and enhanced the sentence, not because of the convictions, but because the defendants "had been involved in drug-related offenses and had not learned from their experiences"), *cert. denied*, 459 U.S. 1044, 103 S.Ct. 464, 74 L.Ed.2d 614 (1982).

diately after pleading guilty, it seems clear that the arraignment was a "critical stage" where the Sixth Amendment right to counsel attached. *Hamilton v. Alabama*, 368 U.S. 52, 53, 82 S.Ct. 157, 158, 7 L.Ed.2d 114 (1961); *see also United States v. Commonwealth of Pennsylvania*, 343 F.2d 447, 451 (3d Cir.1965) ("a hearing on a plea of guilty is a critical stage in the proceedings against the accused, one in which his need for counsel is most urgent").

According to *Argersinger v. Hamlin*, 407 U.S. 25, 37, 92 S.Ct. 2006, 2012, 32 L.Ed.2d 530 (1972), "absent a knowing and intelligent waiver, no person may be imprisoned for any offense ... unless he was represented by counsel at his trial." Furthermore, in *Baldasar v. Illinois*, 446 U.S. 222, 100 S.Ct. 1585, 64 L.Ed.2d 169 (1980) (per curiam), the defendant's prior uncounseled misdemeanor conviction could not be used under Illinois' enhanced penalty statute to convert a subsequent misdemeanor into a felony with a prison term. In the instant case, Ant is in jeopardy of being imprisoned by a federal court because of a prior uncounseled guilty plea.

■ Thus, it appears that if Ant's earlier guilty plea had been made in a court other than in a tribal court, it would not be admissible in the subsequent federal prosecution absent a knowing and intelligent waiver. In order for a defendant to effectuate a valid waiver of the Sixth Amendment right to counsel, the trial court must undertake a thorough inquiry to ensure that the defendant has made an informed decision. *Von Moltke v. Gillies*, 332 U.S. 708, 724, 68 S.Ct. 316, 323, 92 L.Ed. 309 (1948) (plurality). The standard for waiver in the Ninth Circuit is that the trial court should discuss with the defendant in open court whether the waiver is being made knowingly and intelligently, with an understanding of the charges, the possible penalties, and the dangers of self-representation. *United States v. Dujanovic*, 486 F.2d 182, 186–187 (9th Cir.1973); *see also United States v. Harris*, 683 F.2d 322 (9th Cir. 1982).

■ Concerning the question of waiver, the government has the burden of proving waiver, and any doubts must be resolved in favor of no waiver. *Michigan v. Jackson*, 475 U.S. 625, 633, 106 S.Ct. 1404, 1409, 89 L.Ed.2d 631 (1986). The government has implied that Ant waived his right to counsel in tribal court by indicating that he understood his right to counsel and by not requesting an attorney. However, the available facts do not support the conclusion that Ant knowingly and intelligently waived his Sixth Amendment rights under federal and Ninth Circuit standards. For example, Ant was not given the opportunity to have appointed counsel, and he was apparently unaware that his tribal court guilty plea would be used against him in a subsequent federal felony prosecution. Accordingly, the use of the plea as evidence in federal court is unconstitutional.

*B. Fifth Amendment Claim: Voluntariness of Plea*

Ant also argues that the tribal court guilty plea should be suppressed on Fifth Amendment grounds, primarily because it was not voluntary. Ant cites to 18 U.S.C. § 3501, the federal statute governing the admissibility of confessions, and argues that the plea was essentially a confession and did not conform to the requirements of this statute. According to § 3501, in determining the voluntariness of a confession, the trial judge

> shall take into consideration all circumstances surrounding the giving of the confession including ... whether such defendant knew the nature of the offense with which he was charged ... [and] whether or not such defendant was advised or knew that he was not required to make any statement and that any such statement could be used against him.

18 U.S.C. § 3501(b)(2–3). The guidelines for ensuring that a guilty plea is voluntary are outlined in Fed.R.Crim.P. 11(d).

The record is not adequate to determine whether or not Ant's tribal court guilty plea was voluntary under federal law. The district court ruled that the tribal court guilty plea "is not suppressible on the basis that it followed an unwarned confession (i.e. that it is not fruit of the poisonous tree), [but] the Court makes no determination as to other grounds upon which the plea might be attacked." Even though the

panel may "review the district court's ruling on the voluntariness of the guilty plea de novo," *United States v. Ferreira–Alameda*, 815 F.2d 1251, 1252 (9th Cir. 1987) (as amended), there may not be sufficient evidence in the record for us to hold that Ant's tribal court plea was involuntary. In any event, a determination of voluntariness is unnecessary since this matter can be resolved on Sixth Amendment grounds.

## VI. ADMISSIBILITY OF ANT'S TRIBAL COURT GUILTY PLEA IN FEDERAL COURT

As indicated in the preceding discussion, had Ant's prior guilty plea been made in a federal court under identical circumstances, it would be inadmissible in a subsequent federal prosecution. The question in the instant case is different since Ant's prior guilty plea was not made in federal court, but was made in a tribal court where it was valid under tribal law and the ICRA.

The question of whether a constitutionally infirm guilty plea may be admitted as evidence in federal court solely because it was made in compliance with tribal law and with the ICRA is a question of first impression. We hold that such a plea is inadmissible in a federal prosecution.[8]

In the district's court's opinion, failure to admit the plea would violate principles of comity and would disparage the tribal court

---

**8.** The dissent states that "we simply are not willing to treat tribal courts with the same dignity as we do foreign courts." [*Dissent* at 1397.] This claim is erroneous. There is absolutely no authority for the proposition that we would allow into evidence in federal court a guilty plea made in a court of a foreign country that did not comply with the requirements of the United States Constitution, even if the plea conformed with foreign law. This would be true even in cases involving a "civilized" foreign court. Indeed, the contrary assertions of the dissent notwithstanding, the question of whether the foreign jurisdiction is "civilized" is completely immaterial to our holding.

Furthermore, the cases cited by the dissent are misplaced and do not bear upon the instant issues. Indeed, the dissent concedes that none of these cases is directly on point. [*Dissent* at 1397.] Specifically, in the instant case, the tribal guilty plea was admitted as substantive evidence of guilt on a serious federal felony. In contrast, the British conviction in *United States v. Nolan*, 551 F.2d 266, 270 (10th Cir.), *cert. denied*, 434 U.S. 904, 98 S.Ct. 302, 54 L.Ed.2d 191 (1977), was merely admitted under Fed.R. Evid. 404(b) as evidence of "other crimes, wrongs or acts." In fact, the court noted that "[w]e need not decide if a British conviction is admissible to prove guilt or enhance punishment. That issue is not before us." *Id.* at 270. Similarly, in *United States v. Ogle*, 587 F.2d 938 (8th Cir.1978), a prior Japanese conviction was admitted under the very limited purposes of Fed.R.Evid. 404(b).

We do acknowledge, though, that "[t]he Fourth Amendment exclusionary rule does not apply to foreign searches by foreign officials in enforcement of foreign law, even if those from whom evidence is seized are American citizens." *United States v. Rose*, 570 F.2d 1358, 1361 (9th Cir.1978); *see also United States v. Peterson*, 812 F.2d 486, 490 (9th Cir.1987). In cases involving search and seizure in violation of the Fourth

Amendment, evidence is suppressed under the exclusionary rule, not because the evidence is irrelevant or untrustworthy, but rather as a deterrent to unlawful practices by officers in the United States. *See Brulay v. United States*, 383 F.2d 345, 348 (9th Cir.) ("Neither the Fourth nor the Fourteenth Amendments are directed at Mexican officials and no prophylactic purpose is served by applying an exclusionary rule here since what we do will not alter the search policies of the sovereign Nation of Mexico."), *cert. denied*, 389 U.S. 986, 88 S.Ct. 469, 19 L.Ed.2d 478 (1967). Indeed, when United States agents are "substantially" involved in the illegal search and seizure by foreign police, the evidence may be suppressed under the exclusionary rule. *Stonehill v. United States*, 405 F.2d 738, 743 (9th Cir.1968), *cert. denied*, 395 U.S. 960, 89 S.Ct. 2102, 23 L.Ed.2d 747 (1969); *United States v. Verdugo–Urquidez*, 856 F.2d 1214, 1224–1225 (9th Cir.1988), *cert. granted*, —— U.S. ——, 109 S.Ct. 1741, 104 L.Ed.2d 178 (1989). These Fourth Amendment cases, however, have no applicability to the instant matter since the exclusionary rule has no relevance to the question of the admissibility of a constitutionally infirm guilty plea.

The dissent also relies on *Flynn v. Shultz*, 748 F.2d 1186 (7th Cir.1984), *cert. denied*, 474 U.S. 830, 106 S.Ct. 94, 88 L.Ed.2d 77 (1985). We fail to appreciate the applicability of this case. Richard Flynn, a United States citizen, was tried and convicted in a Mexican court on criminal fraud charges. Flynn brought an action against the Secretary of State seeking to have a consular officer at the American Embassy in Mexico City compelled to testify in the Mexican judicial proceedings. The Seventh Circuit refused to compel this testimony, ruling that "the Mexican government is not bound by the requirement of our Constitution even when prosecuting a United States citizen, and it is not this Court's responsibility to supervise 'the integrity of the judicial system of another sovereign.'" *Id.* at 1197 (citing *Jhirad v. Ferrandina*, 536 F.2d 478,

proceedings. Because the district court was rendering an opinion of law, and since constitutional rights are involved, we decide this issue de novo. *La Duke v. Nelson,* 762 F.2d 1318, 1322 (9th Cir.1985).

The district court's application of the principle of comity appears to be novel. While there is a "longstanding policy of encouraging tribal self-government," *Iowa Mutual Ins. Co. v. LaPlante,* 480 U.S. 9, 14, 107 S.Ct. 971, 975, 94 L.Ed.2d 10 (1987), the principle of federal-tribal comity has heretofore been used primarily to prevent direct attacks on tribal proceedings in federal courts, and to require exhaustion of tribal remedies before going to federal court. *National Farmers Union Ins. Cos. v. Crow Tribe of Indians,* 471 U.S. 845, 105 S.Ct. 2447, 85 L.Ed.2d 818 (1985). No such issues are at stake here.

Further, the suppression of Ant's tribal court guilty plea will not disparage the tribal proceedings. Indeed, we are not now reviewing the validity of the tribal court proceedings and we have no problem whatsoever with the fact that the tribal conviction itself is valid.

In suppressing the tribal court guilty plea, we have simply evaluated whether that plea meets the requirements of the United States Constitution for use in a federal prosecution in federal court. In this regard, we have looked beyond the validity of the tribal conviction itself and have reviewed the actual tribal proceedings to determine if they were in conformity with the Constitutional requirements for federal prosecutions in federal court. Had the tribal court proceedings met these requirements, we would have affirmed the judgment of the district court below in refusing to suppress the plea. But since the tribal court proceedings did not meet these requirements, the tribal court guilty plea must be suppressed.

## VII. CONCLUSION

Even though Ant's uncounseled tribal court guilty plea did not violate tribal law

or the ICRA, because the plea would have been in violation of the Sixth Amendment had it been made in federal court, and because suppression of Ant's tribal court guilty plea would not violate principles of comity, and would not disparage tribal proceedings, the order of the district court denying supression of the plea is

REVERSED, the conviction is set aside, and the cause is REMANDED for further proceedings.

O'SCANNLAIN, Circuit Judge, dissenting:

Because I agree with Judge Battin that suppression in federal court of the guilty plea entered in tribal proceedings disparages the integrity of tribal courts, I must respectfully dissent. The majority concedes that Ant's plea in tribal court complied fully with tribal law and the Indian Civil Rights Act (ICRA). The majority points to no evidence of coercion, "shocking conduct," or inaccuracy in the transcript of the tribal proceedings. Because I find no constitutional prohibition against admission of the guilty plea in federal court, and because I find no bar to admissibility as an evidentiary matter, I would affirm Judge Battin's denial of the motion to suppress.

I agree with the majority that had the plea been entered in a state court it would have been constitutionally infirm. I agree with the majority that had the plea been made in a federal court, it would have been constitutionally infirm. I also agree that such a guilty plea, had it been made in a state trial or in another federal trial, would require suppression here for the reasons expressed in the majority opinion.

But none of these principles is relevant here. The plea occurred, not in a federal court, not in a state court, but in a tribal court whose proceedings are entitled to the dignity shown to foreign courts. *See United States v. Wheeler,* 435 U.S. 313, 328, 98 S.Ct. 1079, 1088, 55 L.Ed.2d 303 (1978). Generally, evidence of judicial proceedings

484–85 (2d Cir.1976)). In contrast, the instant case involves no such interterence or supervi-

sion of a foreign or tribal court.

in foreign courts is admissible in federal court. *See Ennis v. Smith*, 55 U.S. (14 How.) 400, 430, 14 L.Ed. 472 (1852); 30 Am.Jur.2d Evidence § 982 (1967). This includes evidence of guilty pleas received in a foreign jurisdiction. *See United States v. Nolan*, 551 F.2d 266 (10th Cir.), *cert. denied*, 434 U.S. 904, 98 S.Ct. 302, 54 L.Ed.2d 191 (1977) (evidence of defendant's British conviction, and his guilty plea leading up to it, even if they were obtained in manner inconsistent with U.S. Constitution, nonetheless held properly admitted in federal criminal trial under Fed.R.Evid. 404(b)); *cf. United States v. Ogle*, 587 F.2d 938 (8th Cir.1978) (even if Japanese system does not afford constitutional due process protections, Japanese conviction admissible to prove identity); *cf. also La Victoire v. Kelly*, 5 A.D.2d 548, 173 N.Y.S.2d 543, 547 (1958) (motorist's plea of guilty in Canada admissible in license revocation hearing to determine whether out-of-state driving violation occurred).

Granted, none of these cases directly addresses the admissibility of a guilty plea to a foreign criminal charge that has as its basis the very same activity as does the federal crime. Admissibility in the case before us is more compelling, however, because there is no danger of Ant's being convicted based on evidence of prior crimes designed to show bad character. *See United States v. Lewis*, 787 F.2d 1318, 1321 (9th Cir.1986); Fed.R.Evid. 404(b).

Furthermore, we have given great deference to search and seizure procedures satisfactory to foreign jurisdictions when they meet certain threshold tests. Generally, such evidence obtained by foreign officials is admissible in federal court. *Cf. Stonehill v. United States*, 405 F.2d 738, 743, 746 (9th Cir.1968), *cert. denied*, 395 U.S. 960, 89 S.Ct. 2102, 23 L.Ed.2d 747 (1969) (evidence seized by foreign officers in raids

which would have violated fourth amendment held admissible in federal court). This is true even when the officials' conduct would violate the Constitution had they been state or federal agents, provided that the conduct (1) does not amount to coercion; (2) is not "shocking"; and (3) is valid in the jurisdiction where the evidence was secured. *See United States v. Rose*, 570 F.2d 1358, 1362 (9th Cir.1978). And, there is a fourth threshold consideration: the foreign jurisdiction must be "at least equally [as] civilized" as the United States. *See United States v. Nagelberg*, 434 F.2d 585, 587 n. 1 (2d Cir.1970), *cert. denied*, 401 U.S. 939, 91 S.Ct. 935, 28 L.Ed.2d 219 (1971). There is no reason not to apply this same four-part standard in cases involving uncounseled guilty pleas in foreign or tribal courts. Just as the fourth amendment is not binding on foreign officials in their evidence gathering activities, so too the sixth amendment is not binding upon foreign or tribal courts. *See Flynn v. Shultz*, 748 F.2d 1186, 1197 & n. 10 (7th Cir.1984), *cert. denied*, 474 U.S. 830, 106 S.Ct. 94, 88 L.Ed.2d 77 (1985) (court stating that "[o]bviously, the Mexican government is not bound by the requirements of our Constitution" and noting that there is "no indication from the debate leading to ratification of the Constitution and the Bill of Rights that application of the Sixth Amendment to foreign court prosecutions was contemplated").

What the majority opinion implies, regrettably, is that we simply are not willing to treat tribal courts with the same dignity as we do foreign courts. Whether the majority intends it or not, its opinion will be construed to mean that evidence from tribal court proceedings obtained in a way which clearly complies with ICRA and tribal law will be suppressed largely because we do not regard tribal courts to be as "civilized" as state and federal courts.[1]

---

**1.** There is potential for even greater disparagement. Under the ICRA, right to counsel is only guaranteed to the extent the defendant can afford an attorney. Under the majority's rationale, could it not be argued that evidence from a tribal proceeding in which an indigent defendant appears *pro se* would never be admissible in federal court? Indeed what policy, other than disparagement, is served by promulgation of the majority's new "policy" on suppression of evidence which by definition has not been obtained by unconstitutional means?

Congress clearly intended that not all provisions of the Constitution be imposed upon the freedom of Indian tribes to conduct themselves in accordance with their own tribal laws—laws, incidentally, which have always been considered to be laws of a sovereign of equal dignity with the United States, not a subdivision of the federal government. *Wheeler*, 435 U.S. at 328, 98 S.Ct. at 1088.

The majority seems troubled by the fact that the sixth amendment is not binding upon tribal courts.[2] But that is exactly what the ICRA tells us. *Compare* U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall ... have the Assistance of Counsel for his defense") *with* 25 U.S.C. § 1302(6) (1982) ("No Indian tribe in exercising powers of self-government shall ... deny to any person in a criminal proceeding the right ... *at his own expense* to have the assistance of counsel for his defense") (emphasis supplied).

Had Congress intended that the full panoply of sixth amendment protections be imposed upon tribal courts, it clearly could have said so in the ICRA. Because the nature of comity between tribal courts and federal courts—analogous to the relationship between sovereign states—is so sensitive and so delicately balanced, it is up to Congress, not this panel, to change the rules if they should be changed at all.

---

2. Of course, I recognize that suppressing a tribal court guilty plea in a federal criminal trial is not equivalent to an imposition of the sixth amendment on tribal courts. Nonetheless, the majority's holding will have far-reaching consequences since virtually all tribal court guilty pleas will be inadmissible in federal court, given the less stringent requirements of the ICRA.