**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, v. MICHAEL BRYANT, JR., *Defendant-Appellant*. | No. 12-30177 D.C. No. 1:11-cr-00070-JDS-1 ORDER |

Filed July 6, 2015

Before: Harry Pregerson, Richard A. Paez,
and Paul J. Watford, Circuit Judges.

Order;
Concurrence by Judge Paez;
Dissent by Judge Owens;
Dissent by Judge O'Scannlain

# SUMMARY[*]

## Criminal Law

The panel issued an order denying a petition for rehearing en banc on behalf of the court in an appeal from the denial of a motion to dismiss an indictment charging the defendant, an Indian, with domestic assault by a habitual offender, in violation of 8 U.S.C. § 117(a).

In its opinion, the panel reversed the district court's denial of the motion to dismiss the indictment. Applying *United States v. Ant*, 882 F.2d 1389 (9th Cir. 1989), the panel held that, subject to the narrow exception recognized in case law for statutes that serve merely as enforcement mechanisms for civil disabilities, tribal court convictions may be used in subsequent prosecutions only if the tribal court guarantees a right to counsel that is, at minimum, coextensive with the Sixth Amendment right. Because the defendant's tribal court domestic abuse convictions would have violated the Sixth Amendment had they been obtained in federal or state court, the panel concluded that it was constitutionally impermissible to use them to establish an element of the offense in a subsequent prosecution under § 117(a).

Concurring in the denial of rehearing en banc, Judge Paez, joined by Judge Pregerson, wrote that the conflict presented was how to apply *Nichols v. United States*, 511 U.S. 738 (1994), which permits the use of a prior uncounseled misdemeanor conviction to enhance a sentence,

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

so long as the conviction does not violate the Sixth Amendment. Judge Paez explained that the opinion did not apply a bright line reading of *Nichols*, permitting the use of such convictions as long as they do not violate the Sixth Amendment (which tribal court convictions, by definition, never do), because *Nichols* is a sentencing case and does not sanction the use of a prior uncounseled misdemeanor conviction to establish an element of a § 117(a) felony prosecution.

Dissenting from the denial of rehearing en banc, Judge Owens, joined by Judges O'Scannlain, Gould, Tallman, Bybee, Callahan, Bea, and M. Smith, wrote that the panel's opinion allowed serial domestic violence offenders to operate with virtual impunity, created a split with the Eighth and Tenth Circuits, and wrongly invalidated an unquestionably valid misdemeanor conviction.

Dissenting from the denial of rehearing en banc, Judge O'Scannlain, joined by Judges by Gould, Tallman, Bybee, Callahan, Bea, M. Smith, and Owens, wrote that the panel's opinion and *Ant* were incorrectly decided because the Indian Civil Rights Act, and not the Sixth Amendment, governs tribal court proceedings. Judge O'Scannlain wrote that the panel's opinion contravened *Nichols* and stood in direct conflict with the only two other circuit courts to consider the issue presented.

## ORDER

The full court was advised of the petition for rehearing en banc. A judge requested a vote on whether to rehear the matter en banc. The matter failed to receive a majority of the votes of the nonrecused active judges in favor of en banc consideration. Fed. R. App. P. 35.

The petition for rehearing en banc is **DENIED**.

Judge McKeown did not participate in the deliberations or vote in this case.

---

PAEZ, Circuit Judge, joined by PREGERSON, Circuit Judge, concurring in the denial of rehearing en banc:

The conflict that presents itself again and again in this case is how to apply *Nichols v. United States*, 511 U.S. 738 (1994), to cases like *Bryant*, where the government seeks to use uncounseled tribal court misdemeanor convictions as an essential element of a felony prosecution under 18 U.S.C. § 117(a).[1] The dissents from denial of rehearing en banc,

---

[1] The full text of § 117(a) reads:

> Any person who commits a domestic assault within the special maritime and territorial jurisdiction of the United States or Indian country and who has a final conviction on at least 2 separate prior occasions in Federal, State, or Indian tribal court proceedings for offenses that would be, if subject to Federal jurisdiction–

along with two other circuits, urge a bright-line reading of *Nichols* that permits the use of these convictions as long as they do not violate the Sixth Amendment (which tribal court convictions, by definition, never do).  We write to explain why *Bryant* does not apply this bright-line rule, while recognizing that only the Supreme Court can clarify the meaning and scope of its decision in *Nichols*.

I

*Nichols* permits the use of a prior uncounseled misdemeanor conviction to enhance a sentence, so long as the conviction does not violate the Sixth Amendment.  *Nichols*, 511 U.S. at 746–47 (citing *Scott v. Illinois*, 440 U.S. 367 (1979)).  That *Nichols* is a sentencing case is significant.  The most salient difference between the guilt and punishment phases of criminal adjudication is that prosecutors must prove each element of an offense beyond a reasonable doubt, *In re Winship*, 397 U.S. 358, 364 (1970), while they generally need only prove the existence of a sentence enhancement factor by a preponderance of the evidence, *see Nichols*, 511 U.S. at 748.  Nothing in *Nichols* purports to sanction the use of an

---

(1) any assault, sexual abuse, or serious violent felony against a spouse or intimate partner, or against a child of or in the care of the person committing the domestic assault; or

(2) an offense under chapter 110A,

shall be fined under this title, imprisoned for a term of not more than 5 years, or both, except that if substantial bodily injury results from violation under this section, the offender shall be imprisoned for a term of not more than 10 years.

uncounseled conviction for *Winship* purposes.  Indeed, to permit the use of those misdemeanor convictions to establish an essential element of a § 117(a) felony prosecution would conflict with our long-held axiom that we hold the government to a *higher* burden when it seeks to prove an essential element of an offense.  *See, e.g.*, *Medley v. Runnels*, 506 F.3d 857, 862 (9th Cir. 2007) (citing *Winship*, 397 U.S. at 364, and *Middleton v. McNeil*, 541 U.S. 433, 437 (2004)).

The Court in *Nichols* acknowledged the reliability concerns that inhere in the Sixth Amendment right to counsel. Critically, the Court affirmed the sentencing court's assessment of criminal history points under the United States Sentencing Guidelines because the sentencing court used the predicate uncounseled conviction during the sentencing phase, rather than the guilt phase.  The Court concluded that the sentencing scheme in that case "accommodated" its reliability concerns because (1) under the Sentencing Guidelines, a defendant may "convince the sentencing court of the unreliability of any prior valid but uncounseled convictions"; and (2) the preponderance of the evidence standard used at sentencing necessarily connotes a less stringent reliability requirement.  *Nichols*, 511 U.S. at 747–48; *id.* at 752 (Souter, J., concurring).

*Nichols* does not hold that an uncounseled conviction is sufficiently reliable to support a conviction in a future prosecution where, as in *Bryant* and *United States v. Ant*, 882 F.2d 1389 (9th Cir. 1989), these accommodations are absent.  It follows that *Nichols* does not invalidate the reliability concerns that underpin this court's precedent in *Ant*.  Rather, *Nichols* leaves open the question of whether a potentially unreliable uncounseled misdemeanor conviction passes muster at the guilt phase.  *Ant* fills this gap by holding

that the government may not use prior tribal court misdemeanor convictions that do not provide an equivalent right of counsel as evidence of guilt in a subsequent federal prosecution. *See Ant*, 882 F.2d at 1396. This approach adheres to the Sixth Amendment's core interest in reliability.

II

Further complicating our reading of *Nichols* is the unique reason why Bryant's uncounseled convictions were constitutionally valid: the predicate convictions all occurred in tribal court, where the Sixth Amendment does not apply.[2] Statutes like § 117(a) affect both tribal and federal enforcement of serious crimes and raise difficult questions of tribal sovereignty. *Compare United States v. Wheeler*, 435 U.S. 313, 323–24 (1978) (affirming "the sovereign power to punish tribal offenders" as "the continued exercise of retained tribal sovereignty"), *with United States v. Lara*, 541 U.S. 193, 200 (2004) (describing Congress's plenary power

---

[2] Notably, *Nichols* involved the use of prior uncounseled convictions in the sentencing court's assessment of additional criminal history points under section 4A1.1 of the Sentencing Guidelines. However, sentencing courts cannot consider tribal court convictions to compute a defendant's criminal history category. U.S.S.G. § 4A1.2(i). A sentencing court may depart from a defendant's criminal history category "[i]f reliable information indicates that the defendant's criminal history categorically substantially under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes[.]" *Id.* § 4A1.3(a)(1). The court must specify in writing the reasons why an upward departure is warranted under this standard. *Id.* § 4A1.3(c)(1). Only then may the court consider "sentences for foreign and tribal offenses." *Id.* § 4A1.3(a)(2)(A). Nothing in *Nichols* contemplates extending its holding to uncounseled tribal court convictions, however, because the Court affirmed the use of Nichols's uncounseled convictions under section 4A1.1, not section 4A1.3.

to pass legislation affecting Indian tribes). In enacting § 117(a), Congress exercised its plenary power to permit more vigorous federal prosecution of serious crimes against women that tribes may not have the resources to address. The importance and urgency of these efforts, as emphasized by amicus curiae the National Congress of American Indians, are beyond dispute.

Congress, however, has readily coupled expanded tribal court jurisdiction with a commensurate right to counsel when due process so dictates. The Indian Civil Rights Act ("ICRA"), 25 U.S.C. §§ 1301–1303, does not provide a right to counsel that is coextensive with the Constitution. Yet, as Congress has endeavored to curb domestic violence in Indian territory more aggressively, it also has moved toward expanding the right to counsel for tribal court defendants. *See id.* § 1302(a)–(c) (codifying the Tribal Law and Order Act of 2010, which allows tribal courts to prosecute felonies and increases tribal courts' sentencing authority, but also requires tribal courts to provide procedural safeguards, including an equivalent right to counsel, when they prosecute cases under such expanded jurisdiction); *id.* § 1304 (establishing a new "special domestic violence jurisdiction" to allow tribes to prosecute non-Indians who commit acts of domestic violence within the tribe's jurisdiction and requiring tribal courts to provide counsel to those defendants).

No part of the decision in *Bryant* is intended to express contempt for tribal courts. Nor does our decision frustrate the purpose of § 117(a) simply because it conditions the use of prior tribal court misdemeanor convictions that result in imprisonment on the provision of counsel. Rather, it is consistent with Congress's dual interest in respecting tribal courts and ensuring due process for tribal court defendants.

For the reasons explained in the opinion and here, we concur in the decision not to take the case en banc. That said, given the sharp division over the important issues at stake in this case, Supreme Court review may be unavoidable.

---

OWENS, Circuit Judge, joined by O'SCANNLAIN, GOULD, TALLMAN, BYBEE, CALLAHAN, BEA, and M. SMITH, Circuit Judges, dissenting from the denial of rehearing en banc:

Michael Bryant likes to beat women. Sometimes he kicks them. Sometimes he punches them. Sometimes he drags them by their hair. He punched and kicked one girlfriend repeatedly, threw her to the floor, and even bit her. When he could not find his keys, he choked another woman to the verge of passing out. Although his violence varies, his punishment never does. Despite Bryant's brutality—resulting in seven convictions for domestic violence—his worst sentence was a slap on the wrist: one year imprisonment, or what someone who "borrows" a neighbor's People magazine from the mailbox on two separate occasions could face. *See* 18 U.S.C. § 1701 (retarding the passage of mail).

There are many, many men like Michael Bryant. And there are even more victims of men like Michael Bryant. American Indian and Alaska Native women are 2.5 times more likely to be raped or sexually assaulted than women in the United States in general. Att'y Gen.'s Advisory Comm. on Am. Indian/Alaska Native Children Exposed to Violence, *Ending Violence so Children Can Thrive* 38 (2014). In light of the grave problem of domestic violence on tribal lands, Congress stepped up by passing the Violence Against Women

and Department of Justice Reauthorization Act of 2005, Pub. L. No. 109-162, tit. IX, § 909, 119 Stat. 2960, 3084 (codified at 18 U.S.C. § 117). Tailored to the unique problems and scenarios that American Indian and Alaska Native Tribes face, § 117(a) provides felony-level punishment for serial domestic violence offenders, and it represents the first true effort to remove these recidivists from the communities that they repeatedly terrorize.

Yet a panel has wiped this important statute off the books. It interprets the Sixth Amendment as prohibiting the use of an uncounseled misdemeanor conviction in a recidivist statute. The panel acknowledges the split it creates with the Eighth and Tenth Circuits.[1] The result is to cut the Navajo Nation in half when it comes to combating this plague, as the border between the Ninth and Tenth Circuits divides its land. The Michael Bryants in Utah and New Mexico face the music of § 117(a), while the Bryants in Arizona play musical chairs, moving from one brutal beating to the next with virtual impunity. This decision has torn a massive gap in the fragile network that protects tribal women and their children from generations of abuse.

This decision creates another even larger split that the panel does not acknowledge. By holding that an unquestionably valid misdemeanor conviction is invalidated by the imposition of a prison sentence, the panel splits with every circuit to seriously consider this issue. The panel's decision is clearly wrong, as the Supreme Court showed in *Alabama v. Shelton*: A prison sentence in these circumstances

---

[1] *United States v. Shavanaux*, 647 F.3d 993, 997–98 (10th Cir. 2011); *United States v. Cavanaugh*, 643 F.3d 592, 595, 604 (8th Cir. 2011).

may be invalid, but the underlying misdemeanor conviction surely is not.**[2]**

Our justification for this legal and practical mess? *United States v. Ant*, 882 F.2d 1389 (9th Cir. 1989), a case that my colleagues have described as "odd," "illogical," *United States v. Bryant*, 769 F.3d 671, 680–81 (9th Cir. 2014) (Watford, J., concurring), and "regrettabl[e]," *Ant*, 882 F.2d at 1397 (O'Scannlain, J., dissenting). It was wrong when decided, and it is really wrong now.

Bryant's victims are vulnerable enough, but this decision leaves them even worse off. It has stripped Congress and the American Indian and Alaska Native Tribes of the power to meaningfully punish the Bryants of the world and protect their victims from another beating (or worse). As our court has refused to take this case en banc, only the Supreme Court can rectify this terrible situation. I urge the Court to do so as soon as possible, before Michael Bryant, and the many more men like him, terrorize more women and their families.

For these reasons, I respectfully dissent from the denial of rehearing en banc in this case.

---

**[2]** *Alabama v. Shelton*, 535 U.S. 654, 661-62 (2002); *see also United States v. Acuna-Reyna*, 677 F.3d 1282, 1284-85 (11th Cir. 2012) (noting that *Shelton* "affirmed in entirety" the decision of the Alabama Supreme Court to invalidate part of Shelton's sentence, but leave his misdemeanor conviction intact); *United States v. Ortega*, 94 F.3d 764, 769 (2d Cir. 1996); *United States v. Moskovits*, 86 F.3d 1303, 1309 (3d Cir. 1996); *United States v. White*, 529 F.2d 1390, 1394 & n.4 (8th Cir. 1976). *But see United States v. Eckford*, 910 F.2d 216, 218 (5th Cir. 1990) (holding otherwise without the benefit of *Nichols* or *Shelton*); *Bryant*, 769 F.3d at 677.

O'SCANNLAIN, Circuit Judge, joined by GOULD, TALLMAN, BYBEE, CALLAHAN, BEA, M. SMITH, and OWENS, Circuit Judges, dissenting from the denial of rehearing en banc:

Judge Owens passionately reveals this opinion's pernicious impact on domestic violence victims, and I share his concern. I also write to explain why the legal errors that corrupt this opinion, and its predecessor *United States v. Ant*, 882 F.2d 1389 (9th Cir. 1989), should have been corrected by our court sitting en banc.

Following *Ant*, the court decides that indisputably valid tribal court proceedings are "constitutionally infirm" because they do not afford the right to appointed counsel required by the Sixth Amendment. *United States v. Bryant*, 769 F.3d 671, 677 (9th Cir. 2014) (citing *Ant*, 882 F.2d at 1394–95). A sensible result, perhaps, were it not for the fact that the Indian Civil Rights Act ("ICRA")—*not* the Sixth Amendment—governs tribal court proceedings. The court grudgingly acknowledges this fact. *Id.* at 675. Yet—undeterred in its quest to punish the tribal court for complying with the procedures that govern it—the court concludes that convictions procured in that venue are so defective that the federal government is barred from even proving the mere *existence* of such convictions in a later prosecution.

Such a decision cries out for review—indeed, with the concurral,[1] *every member of the panel* has acknowledged that

---

[1] As explained by another member of this Court, the term "concurral" refers to a concurrence from denial of rehearing en banc. *See* Alex

this case requires the Supreme Court's attention.**²** It contravenes the Supreme Court's decision in *Nichols v. United States*, 511 U.S. 738 (1994), stands in direct conflict with the only two other circuit courts to consider the issue presented, and, ultimately, holds tribal courts in contempt for having the audacity to follow the law as it is, rather than the law as we think it should be.

I

To summarize briefly the necessary facts: Bryant, a Native American, was convicted of domestic assault in several uncounseled tribal court proceedings. *Bryant*, 769 F.3d at 673. Because the Sixth Amendment right to counsel does not apply to tribal courts, the resulting convictions under tribal law were indisputably valid. *Id*. at 675.

Later, after Bryant again assaulted two women in 2011, the federal government sought to prosecute Bryant for these new assaults under 18 U.S.C. § 117, which criminalizes "domestic assault by an habitual offender." Under section 117, the prosecution not only had to prove Bryant had "commit[ted] a domestic assault" in 2011, but also that he had been convicted of domestic assault "on at least 2 separate

---

Kozinski & James Burnham, *I Say Dissental, You Say Concurral*, 121 Yale L.J. Online 601, 626 n.57 (2012).

**²** First, Judge Watford—who concluded that *Ant* afforded him no choice but to concur—wrote persuasively that *Ant* warrants reexamination and pleaded for "the Supreme Court's intervention." *Bryant*, 769 F.3d at 679, 681 (Watford, J., concurring). Now, the other two panel members also admit that "Supreme Court review may be unavoidable." Concurrence in Denial of Rehearing En Banc at 9.

prior occasions in Federal, State, or Indian tribal court."
18 U.S.C § 117. To satisfy this recidivism element, the
government sought to rely on Bryant's prior tribal court
convictions. *Bryant*, 769 F.3d at 673–74.

Bryant conceded such convictions were valid and
obtained in compliance with the ICRA, but argued that they
could not be used to satisfy an element of section 117 because
they *would* have violated the Sixth Amendment *if* they had
been obtained in state or federal court. *Id.* at 674–75. The
district court rejected Bryant's argument, and he appealed.
*Id*. at 673–74.

## A

Our Court was not the first to consider the use of an
uncounseled tribal court conviction in a section 117
prosecution. Exactly the same question was posed to the
Eighth and Tenth Circuits, and they concluded that using the
prior convictions posed no constitutional difficulty. *See
United States v. Shavanaux*, 647 F.3d 993 (10th Cir. 2011);
*United States v. Cavanaugh*, 643 F.3d 592 (8th Cir. 2011).

Yet the court flatly disagreed with our sister circuits, and
held that the government could not rely on tribal court
convictions unless they afforded the same right to counsel
required by the Sixth Amendment—notwithstanding the
inapplicability of the Sixth Amendment to tribal courts.
*Bryant*, 769 F.3d at 679.

Why did the court toss aside the reasoning of our sister
circuits and turn up its nose at completely valid tribal court
proceedings? Because of *Ant*. In that case we derided a tribal
court guilty plea as "constitutionally infirm" because it

merely "was made in compliance with tribal law and with the ICRA," rather than the Sixth Amendment. *Ant*, 882 F.2d at 1395. We considered it but a trifle that the Sixth Amendment does not in fact apply to tribal proceedings—because the uncounseled plea would have been invalid in *our* Court, we ordered it be suppressed. *Id*. at 1396.

## B

Relying on *Ant*, the court here held that "the government may not rely on tribal court convictions as predicate offenses in § 117(a) prosecutions unless the tribal court afforded the same right to counsel as guaranteed by the Sixth Amendment in federal and state prosecutions." *Bryant*, 769 F.3d 671, 679 (9th Cir. 2014) (citing *Ant*, 882 F.2d at 1394–95). As in *Ant*, it was apparently of little consequence to the court that imposing the Sixth Amendment's requirements on tribal courts conflicts with the procedures Congress laid out in the ICRA.

The court reinforces and repeats *Ant*'s error in trampling on tribal court proceedings and in disregarding the ICRA. But that is not all. Its error in applying *Ant* is magnified by the fact that *Nichols*—which post-dated *Ant*—stripped *Ant* of any legitimacy and exposed it as a naked assault on tribal courts and the ICRA.

## II

At the time of *Ant*, we tried to conceal our contempt for tribal courts in the tangled thicket of *Baldasar v. Illinois*, 446 U.S. 222 (1980) (per curiam), in which a hopelessly

fractured[3] Court held that a valid but uncounseled *state* misdemeanor conviction could not be used in a subsequent federal prosecution. *See Ant*, 882 F.2d at 1394 (relying on *Baldasar* for the proposition "that if Ant's earlier guilty plea had been made in a court other than in a tribal court, it would not be admissible in the subsequent federal prosecution"). *Baldasar* appeared to provide us with some cover—if state court proceedings that were valid but uncounseled could not be used in subsequent federal proceedings, then perhaps valid but uncounseled tribal court proceedings could not be so used either.

Fortunately, *Nichols* cleared out the underbrush of *Baldasar* and overruled it. Adopting the reasoning of the *Baldasar* dissenters, *Nichols* held that "an uncounseled conviction valid under *Scott* [*v. Illinois*][4] may be relied upon to enhance the sentence for a subsequent offense, even though that sentence entails imprisonment." *Nichols*, 511 U.S. at 746–47.

---

[3] *Baldasar* was a mess—providing no rationale for its result, the per curiam opinion instead rested on the varying "reasons stated in [its] [three] concurring opinions." *Nichols*, 511 U.S. at 743–44 (quoting *Baldasar*, 446 U.S. at 224). With nothing resembling a clear holding, *Baldasar* "baffled and divided the lower courts that [] considered it." *Id*. at 746.

[4] Under *Scott*, the Sixth Amendment right to counsel does not apply to uncounseled state or federal proceedings in which a sentence of imprisonment is not imposed. *Scott v. Illinois*, 440 U.S. 367, 372 (1979). *Scott* was relevant to *Nichols* because Nichols challenged a sentencing enhancement that was based on a prior uncounseled misdemeanor DUI conviction—and, under *Scott*, because Nichols's conviction did not include a sentence of imprisonment, "the Sixth Amendment right to counsel did not obtain." *Nichols*, 511 U.S. at 741, 746.

A

Unfortunately, at least for our Court, *Nichols*'s overruling of *Baldasar* exposes our decision in *Ant*—and now this opinion—as based on nothing more than a persistent distrust for tribal courts and a failure to accept that the Sixth Amendment does not apply to tribal proceedings. Viewing *Ant* in light of *Nichols*, one is immediately faced with a puzzling conundrum: If an uncounseled but valid *state* court conviction can support a later federal prosecution under a recidivist statute, then why is it that an uncounseled but valid *tribal* court conviction cannot do the same?

B

The court struggles to explain this anomaly without success.

Its arguments are but slightly rephrased repetitions of a common theme: that "*Nichols* involved a prior conviction that did comport with the Sixth Amendment, whereas this case involves prior convictions obtained under procedures that, if utilized in state or federal court, would have violated the Sixth Amendment." *Bryant*, 769 F.3d at 677 (internal citations omitted).

Yet the court's argument is illogical. Both Nichols's and Bryant's uncounseled convictions "comport" with the Sixth Amendment, and for *the same reason:* the Sixth Amendment right to appointed counsel did not apply to either conviction.

C

Further, the fact that the prior tribal court proceedings "*would* have violated the Sixth Amendment" *if* they were "in state or federal court" is irrelevant—using a federal recidivist statute to prosecute Bryant does not transform his prior, valid, tribal court convictions into new, invalid, federal ones. *Bryant*, 769 F.3d at 678.[5]

Of course, Bryant could not be punished for recidivism if his prior convictions *actually* contravened the Sixth Amendment, because he then would "in effect suffer[] anew from the deprivation of that Sixth Amendment right." *Burgett v. Texas*, 389 U.S. 109, 115 (1967). But here there is no Sixth Amendment violation for Bryant to "suffer anew." *See Bryant*, 769 F.3d at 679 (Watford, J., concurring) (citing *United States v. Shavanaux*, 647 F.3d 993, 998 (10th Cir. 2011)).

Just like Nichols—whose state proceedings were valid but uncounseled, and certainly did not "afford" him the right to appointed counsel guaranteed by the Sixth Amendment—Bryant has never suffered through any constitutionally deficient proceeding, and thus, just like Nichols, his uncounseled but valid convictions can be used to satisfy a federal statute's recidivism element.

---

[5] Indeed, as the Supreme Court has "consistently" made clear, recidivist statutes "penaliz[e] only the last offense committed by the defendant"—here, Bryant's 2011 offenses, not the prior abuses for which he was tried in tribal court. *Nichols*, 511 U.S. at 747; *see also United States v. Rodriquez*, 553 U.S. 377, 386 (2008) ("When a defendant is given a higher sentence under a recidivism statute . . . 100% of the punishment is for the offense of conviction. None is for the prior convictions or the defendant's 'status as a recidivist.'").

## III

It seems that this should have been an easy case. After *Nichols*, an uncounseled but valid conviction can be used in a subsequent prosecution under a recidivist statute. Bryant's uncounseled tribal convictions are valid, and the government is seeking to use them in a subsequent prosecution under a recidivist statute.

Why then, does the court refuse to allow the government to rely on the tribal court convictions?

## A

There can only be one answer—the court is uncomfortable with tribal court procedures and the ICRA.

If, as *Nichols* holds, uncounseled convictions in general *are not* unreliable, then *Ant*'s outcome—and this opinion's—must rest on an assumption that tribal court convictions *are* inherently unreliable. Such an assumption runs directly counter to the Supreme Court's command to respect Indian tribes as "distinct, independent political communities," *Worcester v. State of Georgia*, 31 U.S. 515, 559 (1832), whose judicial systems must be assessed based on their compliance with the ICRA, not the federal constitution. *See Plains Commerce Bank v. Long Family Land & Cattle Co.*, 554 U.S. 316, 337 (2008) (explaining that it is beyond dispute that the "Bill of Rights does not apply to Indian tribes").

B

By concluding that tribal court decisions are inherently suspect even when they comply with the ICRA, *Ant* and this opinion trample upon the principles of comity and respect that undergird federal court recognition of tribal court judgments. *See Wilson v. Marchington*, 127 F.3d 805, 810 (9th Cir. 1997); *see also Iowa Mut. Ins. Co. v. LaPlante*, 480 U.S. 9, 15 (1987) (extending comity to tribal courts).

As *Wilson* observed:

> Comity does not require that a tribe utilize judicial procedures identical to those used in the United States Courts. Foreign-law notions are not per se disharmonious with due process by reason of their divergence from the common-law notions of procedure. . . . Federal courts must also be careful to respect tribal jurisprudence along with the special customs and practical limitations of tribal court systems. Extending comity to tribal judgments is not an invitation for the federal courts to exercise unnecessary judicial paternalism in derogation of tribal self-governance.

*Id.* at 811 (citing *Hilton v. Guyot*, 159 U.S. 113, 205 (1895)) (internal quotation marks omitted).

Yet, here the court holds that "tribal court convictions may be used in subsequent prosecutions *only if* the tribal court guarantees a right to counsel that is, at minimum, coextensive with the Sixth Amendment right," *Bryant*,

769 F.3d at 677 (emphasis added), imposing "judicial procedures identical to those used in the United States Courts." *Wilson*, 127 F.3d at 810. The court exercises the very judicial paternalism warned against in *Wilson*, and acts in derogation of tribal self-governance.

Sadly, distaste for the ICRA and contempt for tribal courts has led the court to disregard the critical comity interest that undergirds respect for tribal courts and their criminal procedures and, contrary to the dictates of Congress, the court "intrude[s] needlessly on tribal self-government." *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 71 (1978). This we cannot do.

IV

Both this opinion and *Ant* are contrary to Supreme Court precedent, invent a Sixth Amendment violation where none exists, erode tribal sovereignty, and disregard the ICRA. If that were not enough, this opinion creates a circuit split by disagreeing with all other circuit courts which have addressed the very issue presented. The concurrence and the concurral ask for Supreme Court intervention. It appears we need it.

I respectfully dissent from our regrettable decision not to rehear this case en banc.