**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellant*,

v.

LAKOTA THOMAS FIRST,
*Defendant-Appellee.*

No. 11-30346

D.C. No.
4:11-cr-00080-SEH-1

OPINION

Appeal from the United States District Court
for the District of Montana
Sam E. Haddon, District Judge, Presiding

Argued and Submitted
November 8, 2012—Portland, Oregon

Filed October 1, 2013

Before: Kenneth F. Ripple,[*] Stephen S. Trott,
and Richard A. Paez, Circuit Judges.

Opinion by Judge Paez

---

[*] The Honorable Kenneth F. Ripple, Senior Circuit Judge for the U.S. Court of Appeals for the Seventh Circuit, sitting by designation.

## SUMMARY[**]

### Criminal Law

Reversing the district court's dismissal of an indictment charging the defendant as a misdemeanant in possession of a firearm in violation of 18 U.S.C. § 922(g)(9), the panel held that a misdemeanor conviction obtained in tribal court may qualify as a predicate offense to a § 922(g)(9) prosecution so long as the defendant was provided whatever right to counsel existed in the underlying misdemeanor proceeding.

The panel concluded that this result does not violate the Sixth Amendment, the Due Process Clause of the Fifth Amendment, or the Equal Protection Clause of the Fourteenth Amendment.

### COUNSEL

Michael W. Cotter, United States Attorney, J. Bishop Grewell (argued), Assistant United States Attorney, Billings, Montana, for Plaintiff-Appellant.

Anthony R. Gallagher, Federal Defender, District of Montana, David F. Ness (argued), Assistant Federal Defender, Great Falls, Montana, for Defendant-Appellee.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## OPINION

PAEZ, Circuit Judge:

Lakota Thomas First was indicted as a misdemeanant in possession of a firearm under 18 U.S.C. § 922(g)(9), which makes it unlawful for a person convicted of a "misdemeanor crime of domestic violence" to possess a firearm. The district court dismissed the indictment because First was not provided with appointed counsel pursuant to the Sixth Amendment at his underlying misdemeanor domestic violence proceeding in tribal court. The government appealed. Interpreting 18 U.S.C. § 921(a)(33) (defining "misdemeanor crime of domestic violence"), we hold that the statute's "right to counsel" provision, *id.* § 921(a)(33)(B)(i)(I), refers to the right to counsel that existed in the predicate misdemeanor proceeding—not to a uniform federal right to counsel. First was convicted of a misdemeanor crime of domestic violence in tribal court, where he had the right to retain counsel at his own expense but lacked a Sixth Amendment right to appointed counsel. Because First was not denied his right to counsel as it existed in the tribal court misdemeanor proceeding, we hold that his resulting conviction could properly serve as a predicate to a § 922(g)(9) prosecution. We further hold that this result does not violate the Sixth Amendment, the Due Process Clause of the Fifth Amendment, or the Equal Protection Clause of the Fourteenth Amendment.

## I. BACKGROUND

In 2003, First, an Indian, was charged in the Fort Peck Tribal Court in Montana for misdemeanor domestic abuse in violation of the governing tribal law. *See* Fort Peck Tribes

Comprehensive Code of Justice ("CCOJ"), tit. VII, § 244 (2003).[1] The statute of prosecution authorized a maximum penalty of three months imprisonment and a $500 fine. *Id.* § 501(2). First appeared before a judge in Fort Peck Tribal Court and pleaded guilty. The judge sentenced First to thirty days in jail, "suspended for 120 days probation." At the time of his guilty plea, First was indigent and could not afford a lawyer. He was not offered the assistance of court-appointed counsel.[2]

In August 2011, the government indicted First for one count of violating 18 U.S.C. § 922(g)(9) for possessing a firearm after having been convicted of the 2003 misdemeanor crime of domestic violence. First moved to dismiss the indictment because he had not been represented by counsel nor had he waived his right to appointed counsel in the 2003 tribal court proceeding. For the purpose of a § 922(g)(9) prosecution, "[a] person shall not be considered to have been convicted" of a "misdemeanor crime of domestic violence" unless "the person was represented by counsel in the case, or knowingly and intelligently waived the right to counsel in the case." 18 U.S.C. § 921(a)(33)(B)(i). The district court granted First's motion and held that First could not be charged with violating § 922(g)(9) on the basis of a predicate

---

[1] Although we are mindful that the term "Native American" or "American Indian" may be preferable, we use the term "Indian" throughout this opinion because that is the term used throughout the United States Code, and the term "Tribal" is used in 18 U.S.C. § 921(a)(33)(A), the statute at issue in this appeal.

[2] Under the standard arraignment script followed by the tribal court judge, it is likely that First was advised of his right to be represented by counsel at his own expense. *See* CCOJ, tit. VI, §§ 401, 501 (2003). First does not argue that he was deprived of his right to retain counsel.

misdemeanor conviction when he had been denied his Sixth Amendment right to counsel in that misdemeanor proceeding.

## II.  JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction under 28 U.S.C. § 1291.  "We review de novo a district court's decision to dismiss . . . an indictment," and the district court's interpretation of the underlying statute.  *United States v. W.R. Grace*, 504 F.3d 745, 751 (9th Cir. 2007) (citing *United States v. Barrera-Moreno*, 951 F.2d 1089, 1091 (9th Cir. 1991) and *United States v. Gorman*, 314 F.3d 1105, 1110 (9th Cir. 2002)).  We may affirm the district court's dismissal of an indictment on any ground supported by the record even if it differs from the rationale of the district court.  *United States v. Telink, Inc.*, 910 F.2d 598, 600 n.1 (9th Cir. 1990) (per curiam).

## III.  ANALYSIS

### A.

Under well-established precedent, the Sixth Amendment right to counsel serves as a constitutional minimum in all state and federal criminal proceedings that result in a sentence of actual imprisonment or a suspended sentence of imprisonment.  *Alabama v. Shelton*, 535 U.S. 654, 658, 672 (2002) (holding that "a suspended sentence that may 'end up in the actual deprivation of a person's liberty' may not be imposed unless the defendant was accorded 'the guiding hand of counsel' in the prosecution for the crime charged" (citation omitted)); *Scott v. Illinois*, 440 U.S. 367, 373–74 (1979) (holding that the Sixth Amendment right to counsel was only required when a defendant was sentenced to "actual imprisonment," which was later expanded by *Shelton*);

*Argersinger v. Hamlin*, 407 U.S. 25, 33, 37 (1972) (holding that defense counsel must be appointed in any criminal prosecution, "whether classified as petty, misdemeanor, or felony," "that actually leads to imprisonment even for a brief period").

However, "[t]his Circuit has held the Sixth Amendment right to counsel does not apply in tribal court criminal proceedings." *United States v. Percy*, 250 F.3d 720, 725 (9th Cir. 2001) (citing *United States v. Ant*, 882 F.2d 1389, 1392 (9th Cir. 1989) and *Settler v. Lameer*, 507 F.2d 231, 241 (9th Cir. 1974)).  As we have explained, "[t]he protections of the United States Constitution are generally inapplicable to Indian tribes, Indian courts and Indians on the reservation [because] . . . Indian tribes are quasi-sovereign nations." *Id.* (citations omitted).  In 1968, however, Congress enacted the Indian Civil Rights Act ("ICRA"), which mandated that a defendant in tribal court be provided a right to retained counsel in all criminal proceedings.  25 U.S.C. § 1302(6) (1968); *see* Pub. L. 90-284, tit. II §§ 201–02, 82 Stat. 77 (Apr. 11, 1968).  In 2010, Congress further provided defendants in tribal court with the right to appointed counsel "[i]n a criminal proceeding in which an Indian tribe, in exercising powers of self-government, imposes a total term of imprisonment of more than 1 year," 25 U.S.C. § 1302(c), but left unchanged the right to retained counsel when a lesser penalty is imposed, *id.* § 1302(a)(6).[3]

---

[3] ICRA provided in part that "[n]o Indian tribe in exercising powers of self-government shall— . . . deny to any person in a criminal proceeding the right . . . at his own expense to have the assistance of counsel for his defense."  25 U.S.C. § 1302(6) (1968).  That provision remained unchanged until Congress enacted the Tribal Law and Order Act of 2010. Pub. L. 111-211, tit. VII § 234, 124 Stat. 2279 (July 29, 2010). The 2010 Act maintained a defendant's right, "at his own expense to have the

Here, the Fort Peck Tribal Court imposed a suspended sentence of thirty days in jail. Although this sentence, had it been imposed in state or federal court, would have triggered Sixth Amendment protection under *Shelton*, the sentence does not trigger such protection in tribal court.[4] Rather, First was entitled to the right to retained counsel under both federal statute, 25 U.S.C. § 1302 (2003), and the tribal law governing Fort Peck Tribal Court, CCOJ tit. VI § 501 (stating in part that in a criminal case "[t]he accused shall have . . . the right to assistance of counsel at his/her own expense").

First does not argue that he was denied his right to retained counsel pursuant to federal statute and tribal law, and we do not address that issue here. Further, the government does not dispute that First was not provided and did not waive a Sixth Amendment right to appointed counsel. Here, the dispute turns on whether a conviction for a misdemeanor crime of domestic violence that was validly obtained in tribal

---

assistance of counsel for his defense" and appended that "[i]n a criminal proceeding in which an Indian tribe, in exercising powers of self-government, imposes a total term of imprisonment of more than 1 year on a defendant, the Indian tribe shall— (1) provide to the defendant the right to effective assistance of counsel at least equal to that guaranteed by the United States Constitution; and (2) at the expense of the tribal government, provide an indigent defendant the assistance of a defense attorney licensed to practice law by any jurisdiction in the United States that applies appropriate professional licensing standards and effectively ensures the competence and professional responsibility of its licensed attorneys." 25 U.S.C. § 1302.

[4] Some tribal courts do provide a right to appointed counsel to defendants in First's position. *See, e.g.*, Laws of the Confederated Salish and Kootenai Tribes Codified, § 1-2-401(2) (Revised 2003) ("An indigent defendant accused of a criminal offense punishable by imprisonment has a right to representation by the Tribal Defender's Office.").

court, under circumstances that would have violated the Sixth Amendment in state or federal court, may qualify as the predicate misdemeanor offense for a prosecution under § 922(g)(9).

We begin by addressing First's statutory argument and then turn to his constitutional arguments.

**B.**

Section 921(a) defines the terms used in § 922, which criminalizes *inter alia* the possession of firearms by certain persons. The relevant portion of § 921(a) provides:

> (33)(A) . . . the term "misdemeanor crime of domestic violence" means an offense that—
>
> (i) is a misdemeanor under Federal, State, or Tribal law; and
>
> (ii) has, as an element, [domestic violence]. . . .
>
> (B)(i) A person shall not be considered to have been convicted of such an offense for purposes of this chapter, unless—
>
> (I) *the person was represented by counsel in the case, or knowingly and intelligently waived* **the right to counsel in the case**; and
>
> (II) in the case of a prosecution for an offense described in this paragraph for which a person

was entitled to a jury trial in the jurisdiction in which the case was tried, either

(aa) the case was tried by a jury, or

(bb) the person knowingly and intelligently waived the right to have the case tried by a jury, by guilty plea or otherwise.

18 U.S.C. § 921(a)(33) (emphasis added).

We must determine whether the "right to counsel" in § 921(a)(33)(B)(i)(I) refers to a uniform federal meaning containing a Sixth Amendment floor (First's contention) or to the right as it existed in the predicate misdemeanor proceeding (the government's contention). We conclude that the government's argument should prevail.

### 1. Statutory Text

We begin with the text of the statute. *Miranda v. Anchondo*, 684 F.3d 844, 849 (9th Cir. 2012) *cert. denied*, 133 S. Ct. 256 (2012). The government argues that in the phrase "right to counsel in the case," the words "in the case" modify the words "right to counsel." We agree. First offers no plausible alternative interpretation that does not effectively eliminate the words "in the case" from the statute. And it is our "duty to give effect, if possible, to every clause and word of a statute." *Duncan v. Walker*, 533 U.S. 167, 174 (2001) (citations and quotation marks omitted). Moreover, the words "in the case" clearly refer to the predicate misdemeanor proceeding, and they could not plausibly refer to any other proceeding. Indeed, in looking to "the language and design of the statute as a whole," *K Mart Corp. v. Cartier, Inc.*,

486 U.S. 281, 291 (1988), the entirety of § 921(a)(33) defines a qualifying predicate misdemeanor.

Unlike First, we do not find it "noteworthy that Congress referred to local law in the clause immediately following the right to counsel provision." That subclause provides that

> in the case of a prosecution for an offense described in this paragraph for which a person was entitled to a jury trial *in the jurisdiction in which the case was tried*, either (aa) the case was tried by a jury, or (bb) the person knowingly and intelligently waived the right to have the case tried by a jury.

§ 921(a)(33)(B)(i)(II) (emphasis added). Although Congress arguably referenced local law more clearly when it spoke about a defendant's right to a jury than it did when it spoke to his right to counsel, that does not mean we can ignore its direction to examine the "right to counsel" as it existed "in the case," i.e., in the predicate misdemeanor proceeding. Put another way, the canon of statutory construction that states "when Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in disparate inclusion or exclusion," *Barnhardt v. Sigmon Coal Co.*, 534 U.S. 438, 452 (2002) (internal quotation marks omitted), is inapplicable in this circumstance because Congress placed a limitation in both subclauses.

First also argues that we should give the "right to counsel" a uniform federal meaning because, by default, words in federal statutes are to be given federal meaning. Although this proposition may be generally applicable, it is

not persuasive here where Congress explicitly modified the "right to counsel" with the phrase "in the case." In the primary case relied upon by First, the Supreme Court held that the term "conviction" in the federal firearms statute, 18 U.S.C. §§ 922(g)–(h) (1976), had a uniform federal meaning. *Dickerson v. New Banner Inst., Inc.*, 460 U.S. 103, 111–12 (1983), *superseded by statute*, 18 U.S.C. § 921(a)(20). There, however, the Court relied on the fact that it had previously interpreted the word "conviction" in a parallel gun control statute to have a uniform federal meaning because "[n]o modifier is present, and nothing suggests any restriction on the scope of the term 'convicted.'" *Id*. at 111 (quoting *Lewis v. United States*, 445 U.S. 55, 60 (1980)). Indeed, the Court noted that "[n]othing on the face of the statute suggests a congressional intent to limit its coverage." *Id*. (internal quotation marks omitted). Therefore, the Court concluded:

> Whether one has been "convicted" within the language of the gun control statutes is necessarily . . . a question of federal, not state, law, despite the fact that the predicate offense and its punishment are defined by the law of the State. This makes for desirable national uniformity unaffected by varying state laws, procedures, and definitions of "conviction."

*Id.* at 111–12 (citation omitted). First also directs us to an Eleventh Circuit case, in which the court interpreted *Dickerson* as standing for the proposition that "[w]ords in federal statutes reflect federal understandings, absent an explicit statement to the contrary, even if a state uses the word differently." *United States v. Ayala-Gomez*, 255 F.3d 1314, 1319 (11th Cir. 2001) (per curiam). Here, in contrast,

Congress explicitly modified "right to counsel" when it appended the words "in the case."

At least one circuit seems to have implicitly read the "right to counsel" provision in § 921(a)(33)(B) as referring to the right that existed in the underlying proceeding. *See United States v. Smith*, 171 F.3d 617, 621–22 (8th Cir. 1999). In *Smith*, the defendant was convicted under § 922(g)(9) on the basis of a prior Iowa misdemeanor domestic assault conviction. *Id*. at 619. The state court appointed counsel, but counsel failed to appear at Smith's plea hearing. *Id*. Smith then waived his right to counsel, pleaded guilty, and was fined $100. *Id*. On appeal, Smith argued that his waiver of the right to counsel was not knowing and intelligent as required by § 921(a)(33)(B)(i)(I). *Id*. The Eighth Circuit noted that Smith's right to counsel in his Iowa misdemeanor proceeding necessarily arose under state law because the Sixth Amendment right did not apply where only a fine was imposed. *Id*. at 622 (citing *Scott*, 440 U.S. at 373–74). Nonetheless, the court went on to evaluate whether Smith's waiver of the *state* right to counsel was valid. *Id*. at 621–22. Although the decision does not explicitly determine whether, for purposes of qualifying as a conviction under § 921(a)(33), the law governing the right to counsel is state or federal, it is at least somewhat telling that the court did not terminate its inquiry the moment it determined that Smith had no federal right to counsel.[5]

---

[5] First argues that other out-of-circuit precedent favors his interpretation of the statute. *See United States v. Frechette*, 456 F.3d 1 (1st Cir. 2006); *United States v. Jennings*, 323 F.3d 263, 275–76 (4th Cir. 2003); *United States v. Bethurum*, 343 F.3d 712, 718 (5th Cir. 2003). These cases are inapposite, as they all interpret what it means to "knowingly and intelligently waive[]" rights contained in § 921(a)(33)(B)—an altogether

On this basis, we are inclined to conclude that the text and structure of the statute render it capable of only one plausible reading: that the "right to counsel" in § 921(a)(33)(B)(i)(I) refers to the right to counsel that existed in the underlying domestic violence misdemeanor proceeding. We find further support in the legislative history of the statute.

## 2. Legislative History

The federal firearms statute codified at 18 U.S.C. §§ 921 *et. seq*. has existed in several iterations. In its initial manifestation, the statute did not include misdemeanors

different inquiry than the one posed here. *See also United States v. Lenihan*, 488 F.3d 1175, 1177–78 (9th Cir. 2007).

In *Frechette*, the First Circuit analyzed "whether the jury waiver question [in § 921(a)(33)(B)] is determined by reference to state law standards or to the federal constitutional standard for waiver." 456 F.3d at 7. The court held that the federal constitutional standard applied to "the validity of a waiver of jury trial." *Id.* The court reasoned that the "very phrase 'knowingly and intelligently' can easily be read as a shorthand encapsulation of the federal constitutional standard.'" *Id.* at 9. Although the jury provision "explicitly referred to the law of the jurisdiction in which the offense was committed," *id.*, the court held that federal constitutional standards governed the sub-provision regarding "waiver" of that right. *Id.* We do not address the application of the federal standard to the words "knowingly and intelligently." Here, we conclude only that this holding does not bear on our decision, where the "right to counsel" is explicitly modified by the words "in the case." § 921(a)(33)(B)(i)(I).

Similarly, in *Jennings*, the Fourth Circuit concluded that a defendant's waiver of his rights to counsel and a jury trial in an underlying state domestic violence misdemeanor proceeding met federal "constitutional minimums." 323 F.3d at 276. This conclusion goes no further than the First Circuit's decision in *Frechette*. The same is true of the Fifth Circuit's reasoning in *Bethurum*. *See* 343 F.3d at 717–19.

whatsoever. *See id.* § 921 (effective through Sept. 29, 1996). In 1996, via the "Lautenberg Amendment" to the Omnibus Consolidated Appropriations Act, Congress added § 921(33)(A), thereby including "misdemeanor crimes of domestic violence" as predicate offenses. *See* Pub. L. 104-208, div. A, tit. I, § 101(f) (Sept. 30, 1996).

The Lautenberg Amendment was hotly contested and sheds some light on the meaning Congress intended in its text.[6] The version read into the record on September 12, 1996 did not include the "in the case" phrase; but rather included convictions only where the defendant

> has been convicted in any court of any crime involving domestic violence, if the individual has been represented by counsel or knowingly and intelligently waived the right to counsel.

142 Cong. Rec. S10377 (Sept. 12, 1996).

As the government points out, the Lautenberg Amendment was intended to help close the gap between the way perpetrators of domestic violence were treated compared to perpetrators of non-domestic violence. Whereas a defendant might only be charged with a misdemeanor for abusing his own spouse, he would likely be charged with a felony for abusing someone else's spouse. 142 Cong. Rec. S10379. As Senator Feinstein said, "This amendment looks

---

[6] *See, e.g.*, Melanie C. Schneider, *The Imprecise Draftsmanship of the Lautenberg Amendment and the Resulting Problems for the Judiciary*, 17 Colum. J. Gender & L. 505, 505–07 (2008) (noting that the amendment was "controversial").

to the type of crime, rather than the classification of the conviction." *Id.* at S10380.

Because Congress was seeking to deprive misdemeanants of gun rights, congressional opponents of the gun ban fought for the inclusion of increased procedural protections for defendants. 142 Cong. Rec. S11877 (Sept. 30, 1996). As Senator Lautenberg noted on September 30, 1996, "opponents of a strong gun ban continued to express concern that gun rights should not be lost without an assurance that offenders will be provided with all appropriate due process." 142 Cong. Rec. S11877 (Sept. 30, 1996). If Congress was going to take away gun rights, defendants needed more process; and we assume that Congress was aware that misdemeanor proceedings typically provide for lesser process than felony proceedings.

The words "in the case" were likely added to address these due process concerns. They were added to the proposed statute between September 12, 1996, when the statute required that "the individual has been represented by counsel or knowingly and intelligently waived the right to counsel" and September 30, 1996, when Senator Lautenberg had changed the language to address due process concerns. *Id.* Thus, we find it hard to imagine that the words "in the case" could have been intended to diminish the "right to counsel" that was unqualified and included in the September 12 version. If anything, the words "in the case" served to engross the right to counsel by referencing the state right to counsel provisions, which can only exceed the federal constitutional minimum.

The first decade after its enactment, § 921(33)(A) did not include tribal convictions within the ambit of its proscription.

It read: ". . . the term 'misdemeanor crime of domestic violence' means an offense that—(i) is a misdemeanor under Federal or State law." 18 U.S.C. § 921 (effective Sept. 30, 1996 to Jan. 4, 2006). In 2006, as part of the Violence Against Women and Department of Justice Reauthorization Act of 2005, Congress amended § 921(33)(A)(i) to include offenders convicted under *tribal* law. *See* Pub. L. 109-162, tit. IX, § 908(a), 119 Stat. 3083 (Jan. 5, 2006).

"We assume that Congress is aware of existing law when it passes legislation." *Miles v. Apex Marine Corp.*, 498 U.S. 19, 32 (1990); *see also Annachamy v. Holder*, No. 07-70336, 2013 WL 4405687, at *5 n.7 (9th Cir. Aug. 19, 2013); *United States v. Vallee*, 677 F.3d 1263, 1265 (9th Cir. 2012). *But see In re Doctor's Hosp. of Hyde Park*, 337 F.3d 951, 960 (7th Cir. 2003). At that time, ICRA provided only the right to retained counsel in tribal court criminal proceedings, 25 U.S.C. § 1302 (2006), and it was well-recognized that the federal constitution did not apply to tribes exercising their sovereign powers, *see Talton v. Mayes*, 163 U.S. 376, 381–82 (1896); *see also* Felix S. Cohen, *Handbook of Federal Indian Law* § 14.04[2] (2012). Therefore, we conclude that Congress was aware that by including tribal court convictions in § 921(a)(33)(A), it was allowing convictions obtained without constitutional protections to qualify as misdemeanors capable of triggering prosecution under § 922(g)(9).

In sum, we conclude that the "right to counsel" in § 921(a)(33)(B)(i)(I) refers to the right to counsel as it existed in the domestic violence misdemeanor proceeding.[7] We next

---

[7] We reiterate that tribal courts must provide at least the right to retained counsel in every criminal proceeding, 25 U.S.C. § 1302(a)(6), and the right to appointed counsel in any criminal proceeding that results in a total

turn to whether this interpretation of the statute violates the Sixth Amendment or the Due Process Clause of the Fifth Amendment.[8]

## C.

First argues that our interpretation of the statute violates the Sixth Amendment and the Due Process Clause of the Fifth Amendment because it allows a conviction obtained in violation of *Scott* and *Shelton* to be used to support his guilt in a subsequent § 922(g)(9) prosecution. First relies on our

---

term of imprisonment of more than one year, *id*. § 1302(c). Again, defendants are entitled to a more expansive right to counsel in some tribal courts, *see supra* note 4, and a federal court enforcing § 922(g)(9) would be required to look to the right that existed in that particular proceeding, even where it exceeded the minimum imposed by § 1302.

[8] Although the district court referenced notions of equal protection, First does not argue that the use of his uncounseled misdemeanor conviction in a § 922(g)(9) prosecution would violate the Equal Protection Clause of the Fourteenth Amendment. Nonetheless, we address that issue because the government briefed it and we may affirm the district court's dismissal of an indictment on any basis supported by the record. *Telink*, 910 F.2d at 600 n.1. The Supreme Court has long held that classifications based on status as a member of a recognized Indian tribe do not violate the Equal Protection Clause. *United States v. Antelope*, 430 U.S. 641, 644–47 (1977). *Antelope* specifically left open the question of whether "instances in which Indians tried in federal court are subjected to differing penalties and burdens of proof from those applicable to non-Indians charged with the same offense" would violate the Equal Protection Clause. *Id.* at 649 n.11. This case, however, does not present such a scenario. First is subject to the same federal statute as any non-Indian, and he faces no greater burden in proving that he was denied the right to counsel that existed in his misdemeanor proceeding.

decision in *Ant*, 882 F.2d 1389, but this case is controlled by *Lewis*, 445 U.S. 55.**[9]**

*Lewis* presented the question of "whether a defendant's extant prior conviction, flawed because he was without counsel, as required by *Gideon v. Wainwright*, 372 U.S. 335 (1963), may constitute the predicate for a subsequent conviction under [18 U.S.C. App.] § 1202(a)(1) [(1980)]," the predecessor to § 922(g).**[10]** 445 U.S. at 56. The Court held that such a flawed conviction could serve as a predicate to prosecution under the firearms statute "despite the fact that the predicate [conviction] may be subject to collateral attack on constitutional grounds." *Id*. at 65.

In reaching this conclusion, *Lewis* distinguished a line of cases holding that a conviction obtained in violation of the Sixth Amendment could not be used in a subsequent prosecution to "support guilt or enhance punishment." *Burgett v. Texas*, 389 U.S. 109, 115 (1967); *see Loper v. Beto*, 405 U.S. 473 (1972) (affirming this proposition in the

---

**[9]** We do not question *Ant*'s continued vitality. *Ant* stands for the general proposition that even when tribal court proceedings comply with ICRA and tribal law, if the denial of counsel in that proceeding violates federal constitutional law, the resulting conviction may not be used to support a subsequent federal prosecution. 882 F.2d at 1395–96. *Lewis*, however, demonstrates that the federal firearms statute is an exception from this general rule. 445 U.S. at 66–67.

**[10]** Section 1202(a) provided in relevant part: "Any person who— (1) has been convicted by a court of the United States or of a State or any political subdivision thereof of a felony . . . and who receives, possesses, or transports . . . any firearm shall be fined not more than $10,000 or imprisoned for not more than two years, or both." 18 U.S.C. App. § 1202(a); *see* Pub. L. 90-351, tit. VII, §§ 1201–1203, 82 Stat. 236 (June 19, 1968).

"support guilt" context); *United States v. Tucker*, 404 U.S. 443 (1972) (affirming this proposition in the enhancement of punishment context). In contrast, *Lewis* concluded that the statute, which prohibited certain individuals from possessing firearms, imposed an "essentially civil disability." 445 U.S. at 67. Therefore, "[e]nforcement of that essentially civil disability through a criminal sanction does not 'support guilt or enhance punishment.'" *Id.* (quoting *Burgett*, 389 U.S. at 115). Although the three Justices in dissent argued that the majority's distinction was "simply inexplicable," *id.* at 72 (Brennan, J., dissenting), *Lewis* remains binding law.

*Lewis* held that the "[u]se of an uncounseled felony conviction as the basis for imposing a civil firearms disability, enforceable by a criminal sanction" does not violate the Sixth Amendment, even when the underlying conviction did. *Id.* at 66–67.

> The federal gun laws . . . focus not on reliability, but on the mere fact of conviction, or even indictment, in order to keep firearms away from potentially dangerous persons. Congress' judgment that a convicted felon, even one whose conviction was allegedly uncounseled, is among the class of persons who should be disabled from dealing in or possessing firearms because of potential dangerousness is rational.

*Id*. at 67. We see no reason not to apply the same reasoning to § 922(g)(9). For very similar reasons, discussed *supra*,

Congress sought to prohibit those convicted of misdemeanor crimes of domestic violence from possessing firearms.[11]

Therefore, it is of no moment that First's misdemeanor conviction was obtained without complying with the Sixth Amendment. The use of such a conviction to trigger the "civil disability" of possessing a firearm does not violate the Sixth Amendment, the Due Process Clause of the Fifth Amendment, nor the Equal Protection Clause of the Fourteenth Amendment.

## IV.  CONCLUSION

In sum, we hold that although the right to counsel in § 921(a)(33)(B)(i)(I) includes a Sixth Amendment constitutional minimum in all state and federal proceedings—

---

[11] The district court determined that *Lewis* was "not applicable to this set of circumstances" because § 921(a)(33)(B)(i) specifically includes procedural defenses to the prior conviction; and thus "the addition of those exceptions in the statute requires this court to look beyond the fact of conviction and to look specifically at the procedures that led up to the conviction." The district court is correct that the provisions in § 921(a)(33)(B) invoke Congress' concern that convictions comply with a defendant's fundamental rights to counsel and to a jury trial. Nonetheless, these provisions do not undermine the conclusion that "[e]nforcement of [the] essentially civil disability [prohibiting firearms possession] does not 'support guilt or enhance punishment.'" *Lewis*, 445 U.S. at 67.

 Therefore, although Congress expressed a heightened concern with the reliability of predicate misdemeanor convictions for § 922(g)(9) prosecutions, this concern does not render application of the statute to First unconstitutional. Rather, the inclusion of tribal convictions within the ambit of the statute shows that Congress balanced its concern with reliability against its concern with tribal sovereignty over criminal proceedings.

and indeed a more expansive right to counsel in many states—a misdemeanor conviction obtained in tribal court may qualify as a predicate offense to a § 922(g)(9) prosecution so long as the defendant was provided whatever right to counsel existed in the underlying misdemeanor proceeding.

**REVERSED and REMANDED**.