# United States Court of Appeals

### For the Eighth Circuit

_____

No. 16-3397

_____

United States of America

*Plaintiff - Appellee*

v.

Michael Lee Long, Jr.

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of South Dakota - Pierre

_____

Submitted: March 10, 2017
Filed: August 29, 2017

_____

Before WOLLMAN, COLLOTON, and SHEPHERD, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Michael Lee Long, Jr., was convicted by a jury of one count of assault with a dangerous weapon, in violation of 18 U.S.C. §§ 1153 and 113(a)(3); one count of simple assault, in violation of 18 U.S.C. §§ 1153 and 113(a)(5); one count of being a prohibited person in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(9), 924(a)(2), and 924(d); and one count of using a firearm during and in relation to a

crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A). The district court[1] sentenced Long to 30 months' imprisonment on the assault with a dangerous weapon count, 6 months' imprisonment on the simple assault count, and 30 months' imprisonment on the prohibited person in possession of a firearm count (prohibited-person count), to run concurrently with one another, and to a mandatory minimum 120 months' imprisonment on the use of a firearm during and in relation to a crime of violence count, to run consecutively with the other counts. Long appeals from the district court's denial of his motion to dismiss the prohibited-person count and its denial of his motions for a new trial and for a mistrial based on alleged violations of Brady v. Maryland, 373 U.S. 83 (1963). We affirm.

## I. Background

On an evening in May 2015, Cynthia Jones-Bear Robe was riding in a vehicle returning from St. Francis, SD, to the town of Rosebud, SD, which is located on the Rosebud Sioux Indian Reservation. Her daughter, K.J., was driving the vehicle, while K.J.'s boyfriend Robert Kills In Water rode in the back seat. They stopped at the Paul Mart gas station and convenience store, for Jones-Bear Robe to buy cigarettes. While Jones-Bear Robe was standing in line, Long came into the store, entered the checkout line behind her, and made a derogatory remark to her about purchasing individual cigarettes. She stated that she did not want to speak to him, left the store after making her purchase, and returned to her vehicle.[2]

---

[1]The Honorable Roberto A. Lange, United States District Judge for the District of South Dakota.

[2]Jones-Bear Robe testified that Long followed her out of the store and continued speaking to her, but the store's surveillance footage shows that Long did not leave the store immediately after Jones-Bear Robe. The footage captured the events inside the store and at the gas pumps, but not in the area where Jones-Bear Robe's vehicle was parked.

Jones-Bear Robe called the police from inside her vehicle to report that Long was harassing her. She exited her vehicle to record Long's license plate number and then returned to the passenger seat of her vehicle. Long, expressing anger that Jones-Bear Robe was reporting him to the police, opened the vehicle's passenger door, pulled a gun out of his pocket, pointed it at Jones-Bear Robe's head, and threatened to shoot Jones-Bear Robe and K.J. At Jones-Bear Robe's instruction, K.J. put the vehicle in reverse and accelerated; Long was hit by and rolled under the open passenger door.

Long then opened fire on the vehicle, with the witnesses at trial giving different accounts of the number of shots he fired. Jones-Bear Robe testified that he might have fired two, three, or four shots. The police dispatcher who took Jones-Bear Robe's call testified that Jones-Bear Robe had said that Long fired twice. The supervisor at Paul Mart testified that she did not hear any gunshots, saying that the cement walls in her office may have accounted for this fact. The cashier at the store testified that she heard one loud sound, like two cars colliding. Kills In Water testified that he heard four gunshots. K.J. testified that there were four shots, two of which hit the vehicle.

On the first day of Long's trial, the government received and provided to defense counsel a report prepared by Sergeant Daniel Reynolds of the Rosebud Police Department, one of the officers who responded to the incident at the Paul Mart, which included statements from two additional witnesses, Jennifer Young and James Bordeaux. Young testified that she was preparing to purchase gasoline outside the Paul Mart during the incident. She testified that she heard three gunshots, and that she had told Reynolds at the scene that she heard "a gun going off," without specifying the number of shots. Reynolds testified that Bordeaux, whom the parties were unable to locate, had told Reynolds that he saw a vehicle reversing quickly and heard a single noise, which he thought was a car backfire. Young identified an

-3-

additional witness from the surveillance video, but the parties were unable to contact her in time for her to testify at trial.

Long moved for a mistrial, or in the alternative for a continuance, on the ground that the government's failure to disclose Reynolds's report violated his Fourteenth Amendment rights under Brady, arguing that the statements by Young and Bordeaux supported his theory that he acted in self defense by firing a single shot at the vehicle to prevent it from running over him. The district court denied the motion during the trial and denied Long's post-trial motion for a new trial. D. Ct. Order of July 13, 2016, at 13-18. It concluded that information within the possession of officers of the Rosebud Sioux Tribal Law Enforcement Services was not within the government's control for purposes of Brady, relying on its previously decided case, United States v. Stoneman, No. CR 09-30101-RAL, 2010 WL 2710477, *1-2 (D.S.D. July 8, 2010). D. Ct. Opinion & Order of July 13, 2016, at 15-16. It concluded that the late disclosure of Young's statement did not prejudice Long because she testified at trial and was cross-examined by Long. Id. at 16-17. It also concluded that Bordeaux's unavailability did not prejudice Long because his statement was "at best, neutral evidence" for Long, and because any prejudice to Long was remedied by his opportunity to recall Reynolds and elicit hearsay testimony regarding Bordeaux's statement. Id. at 17-18.

Long also moved to dismiss the prohibited-person count, arguing that his underlying tribal-court conviction for domestic violence was obtained without counsel and thus could not qualify as a predicate conviction under 18 U.S.C. § 921(a)(33)(B)(i). The district court initially deferred ruling on this motion pending counsel's arguments at the pretrial conference. D. Ct. Opinion & Order of May 6, 2016, at 9-11. The government presented evidence at the pretrial conference that Long had pleaded guilty to an offense of domestic abuse under Rosebud tribal law in June 2011. Long stated that his counsel in that case, Lisa White Pipe, was not a licensed attorney or a law school graduate. Long's district

court counsel stated that he had been unable to find White Pipe's name in the State Bar of South Dakota Membership Directory. The government stated that it had not been aware that White Pipe was not law trained, but agreed that it had been unable to find her name in the Membership Directory. The government did not dispute that White Pipe had in fact been Long's representative. After Long offered to elicit White Pipe's testimony that she was not a licensed attorney, the court stated that it would consider the motion. The court denied the motion the following day, citing <u>United States v. First</u>, 731 F.3d 998 (9th Cir. 2013). D. Ct. Order of May 10, 2016.

## II. Discussion

### A. Right to Counsel for Predicate Offense

We review *de novo* the district court's denial of Long's motion to dismiss the prohibited-person count. <u>United States v. Smith</u>, 171 F.3d 617, 619 (8th Cir. 1999). Under 18 U.S.C. § 922(g)(9), it is unlawful for any person "who has been convicted in any court of a misdemeanor crime of domestic violence" to possess a firearm in or affecting interstate commerce, or to receive a firearm that has been shipped in interstate commerce. Section 921(a)(33)(B), however, provides:

> (B)(i) A person shall not be considered to have been convicted of such an offense for purposes of this chapter, unless—
>
> (I) the person was represented by counsel in the case, or knowingly and intelligently waived the right to counsel in the case; and
>
> (II) in the case of a prosecution for an offense described in this paragraph for which a person was entitled to a jury trial in the jurisdiction in which the case was tried, either
>
> (aa) the case was tried by a jury, or

-5-

(bb) the person knowingly and intelligently waived the right to have the case tried by a jury, by guilty plea or otherwise.

Adopting the reasoning set forth in United States v. First, the district court concluded that this statute did not bar the use of Long's domestic abuse conviction as a predicate for the prohibited-person count. In First, the Ninth Circuit held that, to give meaning to the phrase "knowingly and intelligently waived the right to counsel in the case," the "right to counsel" must refer to "the right as it existed in the predicate misdemeanor proceeding," rather than "a uniform federal meaning containing a Sixth Amendment floor." 731 F.3d at 1003. Because the defendant had only a right to retained counsel at his underlying tribal-court conviction, the Ninth Circuit held that his lack of appointed counsel did not bar the conviction from serving as a predicate offense under 18 U.S.C. § 922(g)(9). Id. at 1001-03, 1009.

We agree with the Ninth Circuit that the phrase "right to counsel" in § 921(a)(33)(B)(i)(I) refers to the right to counsel "as it existed in the predicate misdemeanor proceeding." Id. at 1003. We find Long's arguments to the contrary unpersuasive. Long argues that if Congress had intended the result in First, the subsection of the statute regarding the right to counsel would, like the subsection regarding the right to trial by a jury, have included such qualifying language as "in the case of a prosecution for an offense . . . for which a person was entitled to court-appointed counsel in the jurisdiction in which the case was tried." Appellant's Br. 13. We disagree, for the same reason given by the Ninth Circuit in First—namely, that the phrase "in the case" still serves to qualify the right-to-counsel provision even if the jury-trial provision is qualified more clearly. 731 F.3d at 1004. Long argues that the Ninth Circuit erred in relying on this court's decision in Smith, 171 F.3d at 621-22, but the Ninth Circuit made clear that it drew support from Smith only insofar as that case considered state law in interpreting the phrase "right to counsel" in § 921(a)(33)(B)(i)(I). First, 731 F.3d at 1005. We also reject Long's argument that

-6-

the Ninth Circuit misinterpreted the legislative history of § 921(a)(33). The court stated in First: "If anything, the words 'in the case' served to engross the right to counsel by referencing the state right to counsel provisions, which can only exceed the federal constitutional minimum." 731 F.3d at 1007. In contending that this statement supports his position rather than the government's, Long fails to address the Ninth Circuit's separate conclusion that when, in 2006, Congress added tribal offenses to the definition of "misdemeanor crime of domestic violence" under § 921(a)(33)(A), it "was aware that . . . it was allowing convictions obtained without constitutional protections to qualify as misdemeanors capable of triggering prosecution under § 922(g)(9)." Id. Finding none of Long's arguments to the contrary persuasive, we will follow the approach set forth in First and consider Long's right to counsel as it existed at his tribal court proceedings.

"The Sixth Amendment guarantees indigent defendants, in state and federal criminal proceedings, appointed counsel in any case in which a term of imprisonment is imposed. But the Sixth Amendment does not apply to tribal-court proceedings." United States v. Bryant, 136 S. Ct. 1954, 1958 (2016) (citation omitted). Under the Indian Civil Rights Act of 1968, a criminal defendant in tribal-court proceedings is entitled to appointed counsel when a sentence of more than one year's imprisonment is imposed. 25 U.S.C. § 1302(c)(2). Because Long was sentenced to 365 days' imprisonment, with 305 days suspended, in the underlying tribal-court proceeding, any right that Long had to appointed counsel could have come only from Rosebud tribal law.

The Bill of Rights set forth in the Constitution of the Rosebud Sioux Tribe provides that the tribe shall not deny a criminal defendant the right "to have the assistance of counsel for his or her defense including the right to have counsel provided subject to income guidelines." Const. and Bylaws of the Rosebud Sioux Tribe of South Dakota, art. X, § 1(f). The Law and Order Code of the Rosebud Sioux Tribe allows both professional attorneys and lay counsel to practice in tribal court.

-7-

Law and Order Code of the Rosebud Sioux Tribe § 9-2-6 ("Every person appearing as a party in any judicial procedure before a Tribal court shall have the right to be represented either by lay counsel or professional attorneys and have such counsel and attorneys assist in the preparation and presentation of his case. The Rosebud Sioux Tribe shall have no obligation to provide or pay for such lay counsel or professional attorneys and only those persons who have first obtained admission to practice before the Tribal Courts shall appear therein."). It further provides that both professional attorneys and lay counsel must represent indigent defendants upon appointment by the tribal court. Id. § 9-2-7 ("Any person admitted to practice before the Tribal Court will accept and represent indigent clients without compensation or without full compensation when directed to do so by a Judge of the Tribal Court.").

Long has presented no evidence that his counsel at the tribal-court proceeding was not admitted to practice as lay counsel in the tribal court, arguing only that Ms. White Pipe is not a licensed attorney. Because lay counsel are admitted to practice before the tribal court, we conclude that Long was represented by counsel in the tribal-court proceeding within the meaning of 18 U.S.C. § 921(a)(33)(B), and that his conviction there thus constituted a valid predicate offense under 18 U.S.C. § 922(g)(9).

## B. Evidence Disclosed During Trial

We review for abuse of discretion the denial of Long's Brady-based motions for a mistrial and for a new trial. United States v. Tyndall, 521 F.3d 877, 881 (8th Cir. 2008). "[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Brady, 373 U.S. at 87. "[T]he individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police." Kyles v. Whitley, 514 U.S. 419, 437 (1995). "Brady is

-8-

violated if three requirements are met: 'The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued.'" Tyndall, 521 F.3d at 881 (quoting Morales v. Ault, 476 F.3d 545, 554 (8th Cir. 2007)). "The evidence is not material and no prejudice can be shown unless there is a reasonable probability that the verdict would have been different if the evidence had not been suppressed." Id. "A mid-trial disclosure violates Brady only if it comes too late for the defense to make use of it." Id. at 882.

We need not decide whether the tribal law enforcement officers in this case were acting on the government's behalf such that Reynolds's report was in the government's possession, because the information contained therein was not exculpatory, and even if it was, Long suffered no prejudice. Young appeared at trial and was cross-examined by Long, during which Young testified that she heard three gunshots, clarifying her earlier statement to Reynolds. The district court permitted Long to elicit hearsay testimony from Reynolds regarding the unavailable Bordeaux's statement. To the extent that Bordeaux's statement—that he saw a vehicle moving quickly in reverse and heard a single noise, which he thought was a car backfiring—was exculpatory, Reynolds's testimony mitigated any prejudice that resulted from the disclosure of Reynold's report at the beginning of the trial. Cf. United States v. Almendares, 397 F.3d 653, 664 (8th Cir. 2005) (holding to be adequate the trial-time disclosure of evidence that a witness identified an alternate suspect, where defense did not recall witness but cross-examined another witness regarding the identification). Long presented no evidence that the testimony of the additional witness identified by Young would have been exculpatory had she been found in time to testify at trial. Accordingly, the district court did not abuse its discretion in denying Long's motions for a mistrial and for a new trial.

The judgment is affirmed.

COLLOTON, Circuit Judge, concurring in part and dissenting in part.

A misdemeanant like Michael Long is forbidden to possess a firearm only if he was "represented by counsel in the case" in which he sustained the misdemeanor conviction, or if he "waived the right to counsel in the case." 18 U.S.C. § 921(a)(33)(B)(i)(I). It is undisputed that Long did not waive the right to counsel and that he was not represented by a lawyer in the case. The court concludes, however, that because Long was represented in the case by a nonlawyer, dubbed a "lay counsel" by the Rosebud Sioux Tribe, he was "represented by counsel in the case." I believe that this conclusion is inconsistent with the meaning of the word "counsel" in the statute, so I would reverse Long's conviction for possession of a firearm as a prohibited person.

When the Supreme Court recognized the individual right to keep and bear arms in the Second Amendment, the Court said that its opinion should not be read to cast doubt on the longstanding prohibition on "the possession of firearms by felons." *District of Columbia v. Heller*, 554 U.S. 570, 626 (2008). In 18 U.S.C. § 922(g)(9), Congress extended the prohibition to persons who have been "convicted in any court of a misdemeanor crime of domestic violence." When it established that prohibition, however, Congress included certain procedural safeguards that must be satisfied before a conviction qualifies. If the misdemeanor defendant was entitled to a jury trial "in the jurisdiction in which the case was tried," then he is a prohibited person under the firearm statute only if the case was tried to a jury or if he knowingly and intelligently waived the right to have the case tried by a jury. *Id.* § 921(a)(33)(B)(i)(II). And a convicted misdemeanant loses his Second Amendment rights only if he "was represented by counsel in the case, or knowingly and intelligently waived the right to counsel in the case." *Id.* § 921(a)(33)(B)(i)(I).

-10-

Long was convicted of a misdemeanor in a Rosebud Sioux tribal court. He did not waive a right to counsel in the case, so the key issue here is whether Long was "represented by counsel in the case."

The ordinary meaning of "counsel" in the legal context conveyed by the phrase "represented by counsel" is a lawyer. Webster's defines "counsel" as "a lawyer engaged in the trial or management of a cause in court." *Webster's Third New International Dictionary* 518 (1993). Black's Law Dictionary says that "counsel" means "[o]ne or more lawyers who represent a client," and in turn defines lawyer as "[o]ne who is licensed to practice law." *Black's Law Dictionary* 352, 895 (7th ed. 1999). Courts ordinarily use the term in the same way. *See Zanecki v. Health All. Plan of Detroit*, 576 F. App'x 594, 595 (6th Cir. 2014) ("The problem, then, is that Mark Zanecki was impermissibly acting as the estate's counsel, and [a] nonlawyer can't handle a case on behalf of anyone except himself.") (alteration in original) (internal quotation omitted); *Muzikowski v. Paramount Pictures Corp.*, 322 F.3d 918, 924 (7th Cir. 2003) ("Muzikowski cannot represent the NWLL because he is not a lawyer. . . . Because NWLL has not appeared by counsel, we dismiss it as a party to this appeal.") (citation omitted); *Fernicola v. Eannance*, 25 F. App'x 68, 69 (2d Cir. 2002) ("Although 28 U.S.C. § 1654 provides that '[i]n all courts of the United States the parties may plead and conduct their own cases personally or by counsel . . .,' this does not empower a *pro se* nonlawyer litigant to represent his or her child.") (alteration in original).

The court does not really dispute that "represented by counsel" ordinarily means represented by a lawyer, but concludes that the modified phrase "represented by counsel *in the case*" implies a different meaning here. The natural meaning of the modified phrase, however, is simply that the person was represented by a lawyer *in the criminal case that resulted in the conviction*, not represented by a lawyer in some other context. Many people are represented by counsel in connection with their business affairs, estate planning, or civil litigation. The statute makes clear that a

-11-

misdemeanant is a prohibited person only if he was represented by counsel in his criminal case.

The court relies on the second clause of § 921(a)(33)(B)(i)(I), which provides that a misdemeanant has a qualifying conviction if he "knowingly and intelligently waived the right to counsel in the case." The suggestion is that "in the case" would be superfluous here unless it implied that the second clause referred to "right to counsel" as defined by the Tribe in its constitutional provision concerning "right to counsel." Waiver of a right to counsel under the second clause is not at issue in Long's case. But insofar as the two clauses should be read *in pari materia*, the phrase "in the case" does not justify interpreting "counsel" to mean a nonlawyer in both clauses.

Absent a "plain indication to the contrary," we assume that Congress intended a uniform national definition of statutory terms. *United States v. Storer*, 413 F.3d 918, 921 (8th Cir. 2005). We should therefore assume that "counsel" carries the ordinary meaning of "lawyer" in all jurisdictions where misdemeanants might be prosecuted. The phrase "in the case" in the waiver clause requires the court to determine whether the defendant waived the right to a lawyer "in the case" in which he sustained the misdemeanor conviction. If federal law or the prosecuting jurisdiction provides the right to a lawyer in the case, and the defendant waives that right, then he has been convicted of a qualifying offense. But where, as here, neither federal law nor the prosecuting jurisdiction provided the right to a lawyer, there could be no waiver that would satisfy the statute. To read more into the phrase "in the case" would dilute the procedural protections that Congress included when it added a new category of prohibited persons under § 922(g)(9).

When Long was convicted of a misdemeanor in the tribal court, he was not represented by a lawyer in the case. Therefore, he was not "represented by counsel in the case" within the meaning of § 921(a)(33)(B)(i)(I), and he "shall not be

considered to have been convicted" of a "misdemeanor crime of domestic violence" for purposes of § 922(g)(9). For these reasons, I would reverse Long's conviction for unlawful possession of a firearm as a prohibited person and remand for resentencing. I concur in Parts I and II.B of the court's opinion, and join the decision to affirm Long's three other convictions.

———————————————